United States District Court
For The District Of Columbia

Adrian Williams-El, Pro Se- Petitioner,
(#97648-131 /D.C.D.C. #162-518
1901 "E" Street, S.E., Medical Unit 82-15
Washington, D.C., 20003;

        v.

Michael J. Gaines, Chairman, Et Al,
United States Parole Commission
5550 Friendship Blvd.
Chevy Chase, Maryland, 20815;

Warden Fred Figueroa
Corrections Corporation of America
1901 "E" Street, S.E.
Washington, D.C., 20003; Respondents.

Civil Action No.
_____

Memorandum In Support Of Pro Se Petitioners Emergency Petition For Writ Of Habeas Corpus To Forthwith Order The Release Of This Petitioner Adrian Williams-El, From Respondents Custody Of Imprisonment Back To Special Parole Since Petitioner A Special Parolee Was Freed From All Criminal Charges In The D.C. Superior Court Regarding Formal Criminal

Here, it can be safely stated that Respondent's, United States Parole Commission's Chairman, Michael J. Gaines and his Agent's exhibited an overwhelming level of retalitorial vindictiveness against this petitioner by said Respondents Actions and deed's to maintain petitioners imprisonment in full view of petitioners current medical situation and status in hopes that petitioners heart will give out before petitioners release ... Respondent's prejudical and retalitorial vindictiveness not only violates the due process clause of the fifth Amendment of the United States Constitution in plane view of petitioners serious medical situation, it also shatter's petitioners equal protection right's under the fifth Amendment of the United States Constitution. See

D.C. Code: D.C. Official Code, 2001 Ed. § 16-1901.

See Also Thompson v. Armontrout, 647 F. Supp. 1093 (W.D. Mo. 1986); Thompson v. Missouri Board of Parole, 929 F. 2d 396 (8th Cir. 1991; Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67

(5)

L. Ed. 2d 17 (198.).

See Also Nwanze v. Hahn, 97 F. Supp. 2d 665, subsequent mandamus proceeding, In re Nwanze, 242 F. 3d 521.

See Poindexter v. Nash, 333 F. 3d 372, Centiorari denied, 124 S. Ct. 1486, 158 L. Ed. 2d 135.

Here, the prejudical delay by Respondent's United States Parole Commission's Chairman, Michael J. Gaines, and his Agent's Rises to level of objective unreasonableness Affecting due process safeguards of this petitioner.

## Gross Disproportionality Principles

It can be clearly demonstrated through the Records compised by Respondent's United States Parole Commission's Chairman, Michael J. Gaines, And his Agent's that parolee's in the state of Virginia, the state of Maryland, the state of New Jersey and Most other states Across the United States show that Black and white parolee's faced with similar /

(6)

same "New arrest" are often given the opportunity to defend themselves in said jurisdictions, in various court settings without the fear of having their paroles violated, or have detainer's issued against said parolee's pending the outcome of there criminal cases. Here, not only do "whites" enjoy these same/similar freedom's by these same United States Parole Commission Authorities; but only the "black" (District of Columbia) parolee's are subjected to every avenue to violation and detention because of the color of our skin and our location as (District of Columbia Offenders), before we even have a chance to defend ourselves) in the court systems of the (District of Columbia, whether federal or local) D.C. Superior Court's. We are served detainers faster than any other group or race of people as "(District of Columbia black's)" to hinder, frustrate, and impede our defense's to whatever criminal charges we may face, before whatever local or out of state court systems we face, and it is all designed by these Respondent's,

(7)

United States Parole Commission's Chairman, Michael J. Gaines, and his Agent's.

Such gross disproportionality principles violates the equal protection clauses of the United States Constitutions fifth Amendment. See Weaver V. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed. 2d 17 (1981).

Such prejudical and retalitorial vindictiveness principles own rapid throughout the United States Parole Commission's Actions in handling District of Columbia Black offenders that certainly violate the Due Process Clauses of the fifth Amendment of the United States Federal Constitution; and which offend the principles of the Eighth Amendment's calling upon Cuel and Unusal Punishment's that affects A sole class of Black's who happen to live within the District of Columbia, our Nations Capital.

See Also Medberry V. Crosby, 351 F. 3d 1049, Certiorari denied, 124 S.Ct. 2098.

(8)

## Persons In Federal Custody

The Superior Court of the District of Columbia has no jurisdictional authority to issue writs of habeas corpus for discharging of this petitioner Adrian Williams-El, whom is prejudically and retalitionally vindictively detained under Authority of the United States Parole Commission's Chairman, Michael J. Gaines and his federal Agents. See Al Odah V. United States, 321 F. 3d 1134, 192 A.L.Q. Fed. 775, 355 U.S. App. D.C. 189, rehearing denied (two orders), and Rehearing en banc denied (two orders), Certiorari granted, Rasul V. Bush, 124 S.Ct. 534, 157 L. Ed. 2d 407, Certiorari granted in part, 124 S.Ct. 534, 157 L. Ed. 2d 407, Miscellaneous Rulings, 124 S.Ct. 1706, 158 L. Ed. 2d 353.

See D.C. Official Code, 2001 Ed. § 16-1901 - Owens V. Gaines, 219 F. Supp. 2d 94; Bailey V. Quick, 191 F. Supp. 2d 7.

(9)

# Bail Authority

Here, the petitioner had been released on bail in the Superior Court in formal Superior Court Criminal Case F-00041-05, posed no danger to the Community and no threat of flight, and complied to all the provisions set-forth by the Court while on bond. It was only the <u>vindictive</u> and <u>bias</u> conduct of the United States Parole Commission Authorities that undermind the judges Order.

<u>See</u>   <u>Gaylor V. Does</u>, 105 F. 3d 572 ; <u>United States V. Hudspeth</u>,

143 F. Supp. 2d 32.

Here, the United States Parole Commission Authorities, <u>vindictively</u> and <u>biasly</u> cut short petitioners release while on bond dispite the pre trial services recommendations for petitioners release, dispite the trial judges evaluation of petitioner and the judges Order that petitioner be released forthwith in formal Superior Court Criminal Case F-00041-05, where the ("arresting officer") admitted having <u>Lied</u> on this petitioner and where said United States Parole Commission Authorities knew that the ("arresting officer") admitted having <u>Lied</u> on this petitioner, prejudically and vindictively executed a warrant to cut short petitioners release in hopes that petitioner would be convicted failed in their prejudical and vindictive quest to help petitioner get convicted by limiting his ability to locate key eyewitnesses in petitioners behalf failed anyway.

(10)

See Mapp v. Reno, 241 F. 3d 221; United States v. Ward, 63 F. Supp. 2d 1178. See 18 U.S.C.A. §3142(f).

Here, petitioner is certainly entitled to release upon his own personal recognizance as was in the D.C. Superior Court formal Criminal Case F-00041-05.

Based upon the relevant facts presented here by petitioner, he is certainly entitled to forthwith release upon his own personal recognizance. Petitioner will reside at: 607 Condon Terrace, S.E., Washington, D.C., 20032, and comply with whatever terms set-forth by this Honorable Court.

Petitioner has already "WON" his Criminal case, and this matter is one to determine whether the United States Parole Commission's Chairman, Michael J. Gaines, and his Agent's have exceeded their authority prejudically and vindictively to deny petitioner his rightful freedom.

Whereas, petitioners "Liberty interest" are undermind prejudically and vindictively by these Respondent's and their Agent's.

(12)

Formal Denial Of Institution's
Law Library From Medical Unit 82
By Order Of Respondent Warden
Fred Figueroa And Supported C.C.A.'s
Contract Authority Mr. Terry Parker
Without Due Process Of Law And The
Sabotage Of Petitioner Adrian Williams-El's
CCA Inmate/Resident Grievance And
Supporting Attached Evidence By C.C.A.'s
Supporting Staff

Respondent Warden Fred Figueroa Issued A Memorandum
Order To All CCA Inmates On Medical Unit 82 That
Forthwith Without Formal Notice, Denied All Inmates
On Medical Unit 82 In April Of 2005; The Use Of
The Institution's Law Library, Visitation, Recreation
And Other Activity That Required Us From Leaving Medical
Unit 82 Here At The C.C.A. Correctional Facility.
Petitioner Filed A Formal CCA Inmate/Resident
Grievance In April Of 2005; Listing The Constitutional
And Legal Violations Orchestrated By Warden Fred

(13)

Figueroa Under The Due Process Clauses of The Fifth Amendment of The United States Constitution To No Avail...

See Bounds V. Smith, 97 S.Ct. 1491, 430 U.S. 817, 52 L. Ed. 2d 72 (1977); Burns V. Ohio, 360 U.S. 252, 257, 79 S.Ct. 1164, 1168, 3 L. Ed. 2d 1029 (1959); Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L. Ed. 1034 (1941).

See Griffin V. Illinois, 351 U.S. 12, 20, 76 S. Ct. 585, 591, 100 L. Ed. 891 (1956); Johnson V. Avery, 393 U.S. 483, 89 S. Ct. 747, 21 L. Ed. 2d 718 (1969).

See Wolff V. McDonnell, 418 U.S. 539, 577-580, 94 S.Ct. 2963, 2985-2988, 41 L. Ed. 2d 935 (1974).

See Gideon V. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed. 2d 799 (1963).

See Haines V. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L. Ed. 2d 652 (1972).

See Cruz V. Beto, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L. Ed. 2d 263 (1972).

See Younger V. Gilmore, 404 U.S. 15, 92 S. Ct. 250, 30 L. Ed. 2d 142 (1971).

(14)

See Douglas v. California, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d

811 (1963). Cf. National League of Cities v. Usery, 426 U.S. 833, 96 S. Ct.

2465, 49 L. Ed. 2d 245 (1976).

See Also 18 U.S.C.A. § 4206 (c).

Note: Formal denial of petitioners ("access to C.C.A.'s

institution law library") without prior notice and without any due

process safeguard's being established before hand because of petitioners

("poor heart condition") was not a valid probable factor to deny

petitioner complete access or any access to C.C.A.'s institution

law library without any due process safeguard's having taken

place since petitioner was not a ("contagious health risk")

to himself nor anyone else that would require petitioners

isolation/restriction for medical health purposes and as such

Respondent Warden Fred Figueroa and C.C.A.'s Contract

Authority Mr. Terry

(14-A)

Parker whom was responsible for handling this petitioners C.C.A. inmate/Resident Grievance that has somehow come up suddenly missing According to C.C.A.'s Grievance Lady that handles Answering the inmate/resident Grievances Ms. Allen.

Said sudden disappearance of petitioners C.C.A. Inmate/Resident Grievance dated in April of 2005; from C.C.A.'s Contract Authority Mr. Terry Parker's Office here At 1901 "E" Street, S. E., Washington, D.C., 20003; has all the sign's of institutional sabotage by said C.C.A. Staff to deny petitioner A valid/official Answer/Response and deprive petitioner of the monitary damages sought of $1,000 per day for every day Warden Fred Figueroa denied petitioners his federal constitutional Right's beginning in April of 2005; when petitioner first sought to file his habeas corpus petition Against these same Respondent's when said formal criminal case F-00041-05 was still Alive in the Superior Court and petitioner

dispite being on bond in the Superior Court was detained by Respondent Michael J. Gaines, Chairman, United States Parole Commission's detainer that wasn't exercuted until March 3rd, 2005. Thus, petitioner has been deprived in being able to file for federal relief until now because of Warden Fred Figueroa and his staff's interferences in depriving/denying petitioner to file a timely federal remedy and the prejudice petitioner has sustain in being denied his federal constitutional rights to file a timely federal remedy beginning in April of 2005; that would have allowed timely federal review of the illegal and unconstitutional acts cited here by Respondent Warden Fred Figueroa and C.C.A.'s Contract Authority Mr. Terry Parker and the rest of C.C.A.'s staff that were directly responsible for said illegal and unconstitutional interferences listed here.

See Martin V. Jackson, 21 Fed. Appx. 443.

See Also 28 U.S.C.A. § 2241 Et Seq., The Habeas Corpus Act's Both historic Versions And: Hinebaugh V. Wiley, 137 F. Supp.

(16)

. 2d 69; Byrd V. Moore, 252 F. Supp. 2d 293; Gibson V. Puckett, 82 F. Supp. 2d 992.

See Also Hadley V. Holmes, 341 F. 3d 661, rehearing and rehearing denied, Certiorari denied, 124 S. Ct. 2398; Medberry V. Crosby, 351 F. 3d 1049, Certiorari denied, 124 S. Ct. 2098; Boyd V. Anderson, 265 F. Supp. 2d 952.

Here, Respondent Warden Fred Figueroa and his C.C.A. Agent's further violated petitioners Equal Protection rights under the fifth Amendment of the United States federal Constitution. See Weaver V. Graham, 450 U.S. 24, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981).

Further more, Respondent Warden Fred Figueroa and his C.C.A. Agent's violated petitioners (Due Process rights under the fifth Amendment of the United States federal Constitution.

Further more, Respondent Warden Fred Figueroa and his C.C.A. Agent's violated petitioners First Amendment rights And as such denying petitioner A voice to timely exercise his constitutional rights to timely seek his federal Intervention before A federal

(17)

Court of Law, this denial rises to a level of objective unreasonableness And is grossly disproportionality of the principles that offend the Eighth Amendment's Cruel and Unusual Punishment principles that exist on C.C.A.'s Medical Unit 82 right to this very moment and this very day until a federal forum interceed's And bring's forth justice to all those prisoners helpless to present and Air their grievances As petitioner Adrian Williams-El has finally been able to Accomplish. Respondent Warden Fred Figueroa and his C.C.A Counterparts, staff and or agent's run medical Unit 82 like a concentration camp during Hitler's ruling class in Germany. There have been death's on Medical Unit 82 because of the poor training of said medical Unit staff and their habit in giving inmates the wrong medications where prisoners have suffered and some have even died because of their negligence And poor handling of district of columbia prisoners Asigned to Medical Unit 82 for their illnesses and other injuries There have been cover-up's, After cover-up's to conseal the hardship's of petitioner And other prisoners have suffered on Medical Unit 82,

(18)

that desperately needs federal intervention and investigation to stop/curtail the Abuses and injustices to human life upon Medical Unit 82 by Respondent Fred Figueroa and his C.C.A. Staff, assigned to Medical Unit 82, and others whom have once upon a time worked on Medical Unit 82 need to be investigated and brought to justice. See Johns V. Gilmore, 75 F. Supp. 2d 841. Barton V. Ashcroft, 152 F. Supp. 2d 235. See Also Williams V. Breslin, 274 F. Supp. 2d 421 (2003), Brown V. Roe, 279 F. 3d 742 (2002), Anchuleta V. Hedrick, 365 F. 3d 644 (2004). See 28 U.S.C.A. §2241, 28 U.S.C.A. §2243. See Roman V. Ashcroft, 162 F. Supp. 2d 755 (2001) (When court grants writ of habeas corpus, it is bringing case before it for decision rather than deciding it on merits).

Here, where Respondent's Warden Fred Figueroa and his C.C.A.'s Staff, i.e., Agent's sabotage and failure to timely respond to petitioners timely filed inmate/resident Grievance as stated here, prejudice petitioner substantially by delaying Adjudication and his ultimate release from prison, and the delay certainly was not beyond the Warden's control and or reach. See Wilkerson V. Jones, 211 F. Supp. 2d 856 (2002) (E.D. Mich) See Beall V. Cockrell, 174 F. Supp.

(19)

2d 512 (N.D. Tex. 2001).

Here, petitioner has presented a valid enough claim to authorize discovery as sought to prove disparity issues regarding prejudicial bias to black district of columbia offenders by Respondent's United States Parole Commission's Michael J. Gaines, Chairman, United States Parole Commission, and his Agents, and should petitioner prove said Allegations would entitle him to the relief sought at hand. which is certainly within the jurisdictional scope of this Honorable Court. See Barron V. Keohane, 216 F. 3d 692 (2000).

Where specific Allegations before the court show reason to believe that habeas petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief, it is the duty of the court's to provide the necessary facilities and procedures for an adequate inquiry. 28 U.S.C.A. § 2241 - Id., 28 U.S.C.A. § 2243 - Id.

See Fed. Rules Civ. Proc. Rule 27(A) Et Seq.

See U.S.C.A. Const. Amend. V, Et Seq.

(20)

## Weight And Sufficieny

Petitioner _Adrian Williams-El_, has demonstrated to some positive degree by preponderance of the evidence that his federal constitutional rights were violated here. See _Gaines V. Kelly_, 202 F. 3d 598 (2000).

Where the arresting police officer whom was responsible in the 161 and 163 reports in formal criminal case F-00041-05, formally before the @ D.C. Superior Court, where said arresting officer Admitted he _Lied_ on this petitioner resulting in the criminal case being dismissed with prejudice on June 1, 2005, And where the eyewitnesses in said formal matter gave decriptions of someone other than this petitioner... Petitioner is not 6'2" tall, Petitioner is not extreemly dark in complexion, Petitioner is not 240 pounds, Petitioner is not without facial hair as was the decription of the assailant. Thus, here again the eyewitnesses identifications descripted someone other than this petitioner.

(21)

Their were no fingerprint evidence placing this petitioner at the scene... Their was clear evidence that petitioner wasn't even dressed the same as the assailent. The only thing petitioner can reflect upon, is that petitioner was arrested for being "black."

Thus, the fact that the arresting officer admitted that he lied on this petitioner on the witness stand add's further compelling evidence that petitioner is wrongfully imprison by these Respondent's out of some deep racist vindictiveness.

See Ortega V. Duncan, 333 F. 3d 102 (2003).

See U.S.C.A. Const. Amend. V.

See Also Silva V. Woodford, 279 F. 3d 825, As Amended, Certiorari denied, 123 S. Ct. 342, 537 U. S. 942, 154 L. Ed. 2d 249 (2002).

Should Respondent's United States Parole Commission's Chairman, Michael J. Gaines, and his agent's attempt to call the ("arresting officer") in formal D.C. Superior Court

(22)

Criminal Case F-00041-05, to bring more false testimony to try in falsely imprison this petitioner, Knowing said police officer has already admitted having lied on this petitioner on the legal term I believe is ("giving false testimony"), petitioner respectfully request that this Honorable Court have said police officer arrested for perjury.

See Ortega V. Duncan, 333 F. 3d 102 (2003).

Note: Petitioners Counsel Ms. Vida B. Johnson, Staff Attorney, has the ("transcript") from the proceedings court, and if this same ("Arresting police officer") is called by said Respondent's to present more false testimony we ask that said police officer be taken into federal custody and placed under arrest for perjury.

Should this Honorable Court require it, Counsel Ms. Vida B. Johnson, Staff Attorney, 633 Indiana Avenue, N.W., Washington, D.C., 20004, has the Superior Court's proceedings transcript of said admission by said police officer whom arrested this petitioner and later admitted he lied on this petitioner should be placed in evidence for petitioners case here.

(23)

Petitioner also has a <u>eyewitness</u> of the <u>police officers</u> <u>Admission</u> that he <u>lied</u> on this petitioner, said <u>eyewitness</u> is Ms. <u>Vida B. Johnson</u>, Counsel of this petitioner and Counsel for petitioners <u>Revocation Hearing</u> before the United States Parole Commission's <u>Agents</u>, whom have successfully demonstrated their <u>Bias</u> and <u>overwhelming retalitorial vindictiveness</u> Against this petitioner by their continued <u>detention</u> of petitioner in violation of the <u>Laws</u> and <u>treaties</u> of the United States and the District of Columbia and in <u>Prejudicial violation</u> of their own <u>procedural policies</u> As cited here in petitioners habeas petition. Counsel's phone Number: (202) 824-2348 or (800) 341-2582.

Based on these facts, petitioner respectfully moves this Honorable Court to grant him the immediate relief sought in the <u>interest of justice</u> And According to the <u>Constitution</u> of these United States of America. <u>See</u> Attachment's here.

This being the 3rd day of ___June___ 2005.

Adrian Williams-El
Adrian Williams-El, <u>Pro Se</u> - Petitioner
#97648-131/D.C.D.C# 162-518
1901 "E" Street, S.E., Medical Unit 82-15
Washington, D.C., 20003
(DL)

The Wilful Giving Of False Testimony
By Said Arresting Police Officer In formal
D.C. Superior Court Criminal Case F-00041-05,
And Now Prejudical Witness For Respondent's
United States Parole Commission's Chairman
Michael J. Gaines And His Bias Agent's
Is InFact The Wilful Promotion Of False
Testimony To Falsely Imprison A Innocent
Parolee Adrian Williams-El In Further
Violation Of The Federal Constitution And The
Laws And Treaties Of These United States

We recognize, that should Respondent's United States Parole
Commission's Chairman, Michael J. Gaines, And his Agent's
call upon the formal arresting police officer in formal
D.C. Superior Court Criminal Case F-00041-05, dismissed
with prejudice June 1, 2005, to further promote more
false testimony under oath against this petitioner Adrian
Williams-El, then in accords to:

(25)

. See Also Napue v. Illinois, 360 U.S. 264, 269 (1959),

Mooney v. Holohan, 294 U.S. 103, 112 (1935)(per curiam).

See United States v. Young, 17 F.3d 1201, 1203-05 (9th Cir. 1994).

Whereas, Respondent's United States Parole Commission's Chairman, Michael J. Gaines, And his agents are promoting false information to ("wrongfully imprison") petitioner, know said to be "false" yet, Are clearly demonstrating the "promotion" or "furtherence" of "false testimony" to wrongfully deprive petitioner of his "liberty rights" in violation of the (Due Process Clause of the Fifth Amendment of the United States Constitution.

Petitioner further Acknowledges that the threats and intimidating tactic's employed by the ("arresting officer") in formal Superior Court Criminal Case F-00041-05, to petitioners two eyewitnesses Amounted to An "obstruction of justice." Thus, we also cite Respondent's United States Parole Commission's Chairman, Michael J. Gaines, And his Agent's in promoting the "obstruction of justice," orchestrated by said ("arresting officer"), to polute the truth with their "false testimony"

(25-A)

in attempting to maintain petitioners ("wrongful detention") in violation of the Due Process Clause of the Fifth Amendment of the United States Constitution... and the Laws of the United States.

The attached exhibits (3-C page 3), demonstrates that Respondents United States Parole Commission's Chairman, Michael J. Gaines, and his agents, list the ("arresting police officer") in formal @ D.C. Superior Court Criminal Case F-00041-05, as being Officer Stephen E. Allen, Metropolitan Police Department, Badge # 4377, whom has already admitting that he lied on this petitioner on the witness-stand in formal @ D.C. Superior Court Criminal Case F-00041-05 which is in essence ("obstructing justice") and promoting further ("false testimony.") See United States v. Young, 17 F. 3d 1201, 1203-05 (9th Cir. 1994). See Also Mooney v. Holohan, 294 U.S. 103, 112 (1935)(per curiam).

(25-B)

Respondent Warden Fred Figueroa Stands
In Further Violations Of Petitioners Federal
Constitutional Rights Under One Federal
Disabilities Act:


After Having This Petitioner Adrian Williams-El
Fired From C.C.A.'s Institution's Law Library
In April 2005, Because Petitioner Suffers From
Congested Heart Failure Which Is Certainly Not
A Contagious Illness Requirements Of Which
Would Call For Placement In A Isolation Cell,
But Only That Petitioner Not Overtax Himself
By Lifting Heavy Objects For Petitioners Congested
Heart Failure Is Currently Somewhat Being Controled
By Medications Which Call For Petitioners Blood To
Be Checked Weekly To Prevent Liver Damage
Although Respondent Warden Fred Figueroa's Medical
Staff Here Are Always Running Out Of Petitioners
Medications Where Petitioner Has Gone For Weeks
Without His Medications Because They're Always

(26)

Running Out Of Petitioners Critical Care Medications
That Seemingly Play A Cat And Mouse Game To See
If Petitioner Will Continue To Survive Without Them
While Petitioners Counsel Ms. Vida B. Johnson Is At
Her Wit's End To Try To Have This Petitioner
Medically Released Before His Heart Gives Out
Altogether For All Of Petitioners Medical Doctor's
Have Requested That Petitioner Be Medically Released
Since Petitioners Heart Is Only Functioning At 10%
And Is In Dire Need Of A Heart Transplant From
Washington Hospital Center, Yet. Respondents United
States Parole Commission's Chairman Michael J. Gaines
And His Agent's Seek To Continue This Inhumane
Treatment And Detention Of Petitioner Dispite The
Plea's For Petitioners Release From His Doctor's In
The Community Whom Are Desperate To Try To Save
This Petitioners Life Which Respondent's United States
Parole Commission's Chairman Michael J. Gaines And
His Agent's Have Thus Far Ignored The Plea's For
Petitioners Medical Release Dispite Petitioners Clear
Physical Deterioration From His Heart, Yet Petitioner

(27)

Has A Legal Constitutional Right To Try To Make A Living Teaching Prisoners Street Law And Their Federal Constitutional Rights As Well As Assist Them In The Preparation Of Their Legal Papers To Present In The Court System's Throughout These United States And The District Of Columbia Is Petitioners Legal Constitutional Entitlement Under The Due Process Clause Of The Fifth Amendment Of These United States That Respondent Warden Fred Figueroa Need's To Understand And Continue To Try To Undermined Vindictively Because This Petitioner Also Has A Constitutional Right To Life That He's Desperately Fighting To Maintain Dispite His Inhumane Treatment Here At C.C.A.

Petitioner Adrian Williams-El, was formally employed here At C.C.A.'s Law Library within said institution until Respondent Warden Fred Figueroa issued A Memorandum to have Medical Unit 82 locked down and to prevent Anyone housed their from being able to have visits, legal or otherwise, to deny us recreation on the outside, to deny Anyone working off the Unit As this petitioner

(28)

WAS in the Institution's law library from working And to generally keep us locked in on Medical Unit 82 period. Thin petitioner filed a inmate/resident Grievance form in April of 2005 when the warden's Memorandum was issued and we were denied formal Notice before said Actions were taken place, denied legal phone calls to keep the legal Communities from becoming aware of these new illegal and unconstitutional Acts taken place on Medical Unit 82 without due process of law. Petitioners inmate/resident Grievance form was sabotaged According to the C.C.A. Grievance lady Ms. Allen by it disappearing from the Contract Authorities Office Mr. Terry Parker of C.C.A. Thus, petitioners inmate/resident Grievance was sabotaged And underminded by this racist, vindictive Administration under Respondent Warden Fred Figueroa. Petitioner has for months sought justice in this unconstitutional environment, and only recently After being removed from Medical Unit 82 despite petitioners serious medical

(29)

Condition, has been Allowed to regain him job in C.C.A.'s Law Library without appology for having wrongfully fired petitioner, without appology for having wrongfully denied petitioner back pay, without appology for having wrongfully depriving petitioner of the work he loves as a teacher and educator to those prisoners whom would otherwise be lost and deprived of their federal constitutional rights, without appology for having lied on petitioner to try in justify petitioner having been fired by stating petitioner was found to be lazy and wouldn't work which everyone knows is more of C.C.A.'s lies to cover-up their wrong-doings.

Petitioner sought $1,000 per day for having been prejudically denied my federal constitutional rights to earn a living and do the work petitioner loves without harastment, interferences, threats, and wrongful termination of petitioners job for those two months as stated here.

Petitioner does seek additionally, 5 million dollars for Respondent Warden Fred Figueroa's violation for violations

of the federal disabilities Act:

Wherefore, for the reasons stated here and hereto in petitioners 28 U.S.C.A. §2241 Et Seq. and 28 U.S.C.A. §2243 Et Seq., and petitioner engaging the Writ of Mandamas Act to later litergate violations of the federal disabilities Act: See 28 U.S.C.A. §1331 Et Seq.

Petitioner is legally and constitutionally entitled to the emergency relief he so justly seeks against these Respondents and their Agents; we ask that said commence forthwith.

(31)

Petitioner Never Signed Any Consent Or
Agreement To Be On Special Parole Nor
Has Petitioner Ever Signed Any Consent Or
Agreement To Comply With Any Rules Or Regulations
Orchestrated By Respondent United States Parole
Commission

Whereby, under the provision's set forth under "Contract
Law", their has to be some form of written Agreement
that the parolee's Adcepts and will comply to whatever
regulations, rules, policies and or guidelines issued by the
governing Authority, i.e., ("the United States Parole Commission")
without that written and signed Agreement, this petitioner
cannot legally be bound by regulations, rules, policies and
or guidelines that was never presented from nor agreed to,
Adhere to. As the United States Parole Commission's Chairman,
Michael J. Gaines, Et Al., and his agents that not only has

(32)

This petitioner refused to sign "Any Contract Agreement" with the United States Parole Commission, but that the Superior Court Criminal Case on this subject is still under Criminal Appeal before the Superior Court of the District of Columbia under D.C. Code §23-110, currently in chambers of formal sentencing judge where the Appeal itself deals with the Argument that petitioner only pleaded to A ("single sentence") not A ("split sentence") that petitioner was sentence to. This part is part of Record.

Wherefore, if Respondent's cannot come up with A signed Agreement by the petitioner to show that petitioner was in "Agreement to comply" with the rules, regulations, policies and or guidelines comprised and orchestrated by the United States Parole Commission, than said Authorities are in breach/violation of the Contract Laws of the District of Columbia and the Contract Laws of the United States of America. Furthermore, said Authorities cannot justify detaining petitioner over regulations, rules, policies, procedures and

(32-A)

guidelines that petitioner was never presented, than the petitioner cannot be penalized for the things Respondent's never informed him of, and never has petitioner "Agreed" to said regulations, rules, policies, procedures and or guidelines, orchestrated and comprized by the United States Parole Commission.

## Contracts

In its full and more liberal significance, it comprises every description of Agreements, obligations, or legal ties, whereby one party binds himself, or becomes bound, expressly or impliedly, to pay a sum of money, or perform or omit to do a certain Act... Woodruff V. State, 3 Ark. 285. Quinn V. Shields, 17 N.W. 437, 442, 62 Iowa 129, 49 Am. R. 141... Corpus Juris cited in: McNally V. Ponce, 34 N.W. 2d 262, 264, 150 Neb. 267, and so includes records, specialties, and simple or parol contracts, but it is usually employed

(32-B)

to designate specialties or simple contracts. _Pelham v. State_, 30 Tex. 422; _Sawyer v. Vilas_, 19 Vt. 43 ("simple" or "parol" contracts defined.) _See infra_ §10.

The word "_Contract_" is broad enough to include contracts both in writing and by parol. _Frankfort Modes Glass Works v. Arbogast_, 145 S.W. 1122, 1124, 148 Ky. 4.

While it is said that there is no difference between "_Contract_" and "_Agreement_," _Douglass v. W. L. Williams Art. Co._, 85 S.E. 993, 143 Ga. 846 . . ., "_Agreement_" is in some respects a wider term, _Stevens V. Dillon_, 168 P. 2d 492, 494, 74 C. A. 2d 178, many agreements do not produce any legal effect on the relations of the parties, and to amount to a Contract the agreement must be of a nature to produce a binding result on the mutual relations of the parties _Tucker V. Sheeran_, 160 S.W. 176, 178, 155 Ky. 670.

(32-B-1)

## Character Determined By Effect Of Terms

The character of an instrument is not determined by the name given it, nor by the definitions contained therein, but by the general legal effect of its terms. *Holden V. Peterson*, 82 P. 2d 1095, 52 Ariz. 429.

"Contract" also is to be distinguished from "Arrangement." *Boyle V. Great Northern R. Co.*, 43 P. 344, 345, 13 Wash. 383.

There is a well-recognized distinction between the contract itself and its obligation in that the contract is the agreement of the parties, whereas the obligation is the remedy which the law affords for its enforcement, *Moore V. Holland*, 16 S. C. 15, 29; *Board of Highway Commissioners V. Bloomington*, 97 N. E. 280, 283, 253 Ill. 164; *People ex rel. Powles V. Alexander County*, 35 N. E. 2d 92, 310

(32-B-2)

. Ill. App. 602, but under common law the word "contract" included all rights which could be enforced by any of the actions ex contracts. *Board of Highway Commissioners v. Bloomington*, 97 N.E. 280, 283, 253 Ill. 164; *People ex rel. Powles v. Alexander County*, 35 N.E. 2d 92, 310 Ill. App. 602.

The terms or operative provisions of a contract are of two kinds, which may be distinguished as undertakings and conditions. "undertakings" are terms which create obligations, while "conditions" are contingencies on which the contract itself, or any particular obligation created by it, is to depend. *General Am. Life Ins. Co. v. Armstrong*, 185 S.W. 2d 505, 182 Tenn. 181.

"Contract" and "compact" are convertible and synonymous terms. *Chesapeake, etc., Canal Co. v. Baltimore, etc. R. Co.*, 4 Gill & J. 1, 130.

(32-B-3)

"Transaction" is a broader team than "Contract," Autophone Corporation V. Coale, 133 S.W. 2d 343, 348, 345 Mo. 344. Coastal Produce Ass'n V. Wilson, 8 S.E. 2d 505, 508, 193 S.C. 339, for, while a contract may be said to be a transaction, Herald & Globe Ass'n V. Clere Clothing Co., 84 A. 23, 25, 86 Vt. 141, a transaction is not necessarily a contract. Metropolitan Cas. Ins. Co. of New York V. Lehigh Valley R. Co., 109 A. 743, 744, 94 N.J. Law. 236.

While the team is sometimes used as meaning the writing by which the agreement is evidenced, Stankey V. Minneapolis, 19 Minn. 203, the writing is not the contract, but written evidence of it, Southern R. Co. V. Huntsville Lumber Co., 67 So. 695, 191 Ala. 333, 337.

Therefore, Respondent's United States Parole Commission's Chairman, Michael J. Gaines, Et Al., and his Agent's have no signed or verbal

(32-B-4)

. "Contract," nor a signed or verbal "Agreement," nor a signed or verbal "transaction," nor a signed or verbal "Undertakings," nor a signed or verbal "conditions," nor any enforceable "ex contracto."

Wherefore, petitioner cannot be forced to adhere to any rules, regulations, policies, procedures, and or guidelines comprised by the United States Parole Commission's Chairman, Michael J. Gaines, Et Al, and his Agents. Furthermore, their is no enforceable "ex contracto."

Wherefore, petitioners "Liberty interest" under the due process Clause of the Fifth Amendment have been violated here by these Respondent's. Burden of Proof

As such, petitioner has satisfied the weight of his side on "Burden of proof" through factual allegation's, witnesses to be called, an eyewitness to be called, and petitioners exhibits.

(32-B-5)

In a habeas corpus proceeding, the petitioner generally has the burden of proof, but once he has established his claims, the burden shifts to the government identity to show the contrary of petitioners allegations. See Webster V. Estelle, 505 F.2d 926, Certiorari denied, 95 S.Ct. 1581, 421 U.S. 918, 43 L.Ed. 2d 785.

See Also Carmical V. Craven, 457 F.2d 582, Certiorari denied, 93 S.Ct. 227, 409 U.S. 929, 34 L.Ed. 2d 186.

Wherefore, petitioner calls the Courts attention to the fact that we, i.e., petitioner and petitioners counsel Ms. Vida B. Johnson have the ("transcript") from formal D.C. Superior Court Criminal Case F-00041-05, where the "arresting officer" in said formal criminal case admitted under cross-examination that he lied on this petitioner, As such the giving of false testimony to falsely imprison someone is an objection of justice promoted by these Respondent's to further threaten petitioners "liberty interest."

(32-B-6)

Wherefore, based upon these facts presented before this Honorable Court, as well as my serious medical needs regarding my "heart", I forthwith request that under the Habeas Corpus Act, Et Seq, that the Honorable Court Order Respondent's United States Parole Commission's Chairman, Michael J. Gaines, or his replacement Et Al, And said Agents be Ordered that their WARRANT detaining this petitioner be suspended forthwith, and that petitioner be released upon his own personal recognizance forthwith that petitioner whom has been without "All" his heart medications for the past week may attend to his medical needs before Washington Hospital Center and that petitioner will reside at 607 Condon Terrance, S.E., Washington, D.C., 20032, until such time that this Honorable Court requires petitioners appearance before this Honorable Court.

Petitioner hopes to retain private counsel's, to persue petitioners interest in this travesty of justice; and until such time petitioner prays to be accountable only to this

(32-C)

Honorable Court, that would not threaten a innocent man's "liberty interest" As has these retalitorial, vindictive butchers of due process and fair play.

This matter exceeds the common ground of decency and integrity, Respondent's have neither, nor do they have a single clue As to due process safeguards govern by the (Due Process Clauses of the fifth Amendment of the United States federal Constitution.

If they had a single once of integrity, they wouldn't be attempting to further deprive this petitioner of his "liberty interest" in promoting more false testimony by the "arresting officer" in formal criminal case F-00041-05, formally before the Superior Court of the District of Columbia.

Thus, we pray that this Honorable Court grant petitioners bail request As soon As humanly possible.

(32-(N))

# Civil Liberties Violated

Petitioner Adrian Williams-El, has been forced to endure and has suffered the scourge of AN apartheid run system as the United States Parole Commission's Chairman Michael J. Gaines, Et Al., and his apartheid styled agents that prejudically, racially and wrongfully targeted District of Columbia Black Parolee's in their racially motivated operation to terminate District of Columbia Black Parolee's paroles upon any new arrest even before they are Afforded an opportunity to defend themselves in any of the local District of Columbia Court Systems.

District of Columbia Black Parolee's are being racially targeted by the United States Parole Commission employee's... they are targeted racially upon any new arrest they encounter regardless of the legal outcome of the new arrest they are systematically racially targeted for immediate warrants for parole violations based upon our race and regardless to pre-trial services recommendations that may make it appropriate for said Black Parolee's to be bonded to help pre pare our criminal cases for trial, but that

(32-E)

Constitutional entitlement for <u>BLACK parolee's</u> of the <u>District of Columbia</u> is systematically, racially, prejudicially underminded by the scourge of an apartheid run system As the United States Parole Commission's <u>intent</u> to <u>target</u> only <u>BLACK parolee's</u> of the <u>District of Columbia</u> for instant parole violations regardless of the outcome of said criminal arrest. No other system has engaged in such a racially devided and racially motivated quest to <u>arrest</u> <u>other</u> <u>nationalities</u> throughout other <u>states</u> and <u>territories</u> for "new arrest" regardless to their outcomes other than <u>BLACK parolee's</u> of the <u>District of Columbia</u> whom are <u>hunted like animals</u> simply because of the <u>color of our skin</u> and our <u>location</u> as <u>District of Columbia residents</u>. The United States Parole Commission is federally funded and seemingly comprised of apartheid styled task forces to seek out <u>District of Columbia BLACK Parolee's</u> and <u>violate</u> <u>District of Columbia BLACK Parolee's</u> their parole's even before they have an opportunity to defend themselves of any charges they may obtain within the District of

Columbia and or outside the (District of Columbia so long as they are BLACK offenders and BLACK parolee's of the District of Columbia. White's are seldom even issued Warrant's, upon "new arrest," and are always presented the opportunity to defend themselves in either criminal or civil court system's within the District of Columbia or outside the District of Columbia without the fear of being violated by the "same" United States Parole Commission's employee's, whom only racially targeted "Black District of Columbia parolee's." This rogue Aparthied styled task forces which operates within the United States Parole Commission is a rogue aparthied task force that opperates without fear of discovery because they are unaccountable to any oversight mechanism's. Such racially motivated task forces are overwhelmingly prejjdical and demonstrate their irresponsibleness) At every turn, yet are federally funded Agency designed and operates to violate the "Civil Liberties" of "all" District of Columbia BLACK Parolee's whom have obtained "new arrest."

(32-G)

Such prejudically inresponsibleness by said federally funded Agency violates this petitioners "civil liberties" and "due process safeguards" under the Fifth Amendment of the United States Federal Constitution.

Such Aparthied styled task forces with their racially motivated agenda's to single out solely, (District of Columbia Black Parolee's whom have "new Arrest's" for the sole purposes of issuing parole violation warrants upon them and as well violating their paroles regardless to the outcome of said charges) violates the equal protection clauses under the federal constitution's fifth amendment and further violate the Ex post facto Law that restrict's governmental power by restraining Arbitrary potentially vindictive legislation and or federally funded agencies such as the United States Parole Commission's Aparthied styled task forces with their racially motivated Activities that systematically hunt Black Parolee's of the (District of Columbia) for the sole purposes of violating their paroles for "new Arrest" regardless of the Outcomes, violates the laws of the United States

(32-H)

And the federal constitution. See U.S.C.A. Const. Art. 1, §10, cl. 1...

See Also U.S.C.A. Const. Art. 1, §9, cl. 3.

Wherefore, We respectfully request that this Honorable Court grant petitioner Adrian Williams-El, the relief sought here under 28 U.S.C.A. §§2241 Et Seq., and 28 U.S.C.A. §2243 Et Seq., regarding the ten (10) response time to Answer which is constitutionally time enough for these Respondent's to Answer, And petitioner will Traverse reply answer within the five (5) days as provided by statute.

Whereas, petitioner prays that should this matter exceed twentyone (21) days that this Honorable Court Order petitioners appearance for Bond Hearing and Review and that this petitioner be released upon his own personal recognizance forthwith. This being the 3rd day of June 2005.

Adrian Williams-El, Pro Se-Petitioner
#97648-131 / D.C.D.C. #162-518
1901 "E" Street S.E., Medical Unit 82-15
Washington, D.C., 20003

(32-I)