United States District Court
For The District Of Columbia

Adrian Williams-El, Pro Se-Petitioner,
(Federal No. 97648-131/D. C. D. C. # 162-518
C.C.A. (D.C.)
1901 "E" Street, S.E., EIB-20
Washington, D.C., 20003;

        V.

Michael J. Gaines, Et Al., Chairman,
United States Parole Commission
5550 Friendship Blvd.
Chevy Chase, Maryland, 20815, Respondents;

      And
Warden Fred E. Figueroa, Custodian,
Warden C.C.A. (D.C.)
1901 "E" Street, S.E.
Washington, D.C., 20003; Respondent.

Civil Action No.
1:05-CV-1387

Motion Directing Petitioners Custodian Warden
Fred E. Figueroa, Warden C.C.A. (D.C.)

(1)

To Stop Impediating, Hindering, Hampering And
Creating Obstacles And Interfering With
Petitioners Constitutional Rights To Litigate This
Matter Before This Honorable Court By
Denying Petitioner The ("Legal Brown Envelopes")
That Petitioner Has Repeatedly Requested From
Case Management Staff And Grievance Lady Ms. Allen
To No Avail Regarding Petitioners Illegal And
Unconstitutional Restraints Upon Petitioners Conditional
Liberty Interest By Respondents' Michael J. Gaines,
Et Al., Without Due Process Of Law

Comes now, the pro se-petitioner Adrian Williams-El,
Federal No. 97648-131/D.C.D.C. # 162-518, whom moves this
Honorable Court in the above entitled matter for federial
judicial relief pursuant to Fed. R. Civ. Proc. Rules: 6 (d) and
7 (b) Et. Seq.
As grounds for this motion the petitioner Adrian Williams-El,
Federal No. 97648-131/D.C.D.C. # 162-518, respectfully states:

(2)

Warden <u>Fred E. Figueroa</u>, petitioners Custodian, seemingly has a problem providing ("legal envelopes,") esspecially the (" Brown 8 X 10 Envelopes") petitioner has been request for over the past 2½ weeks so that petitioner may mail out the remaining litigations he's been delayed in sending timely because of Warden <u>Fred E. Figueroa</u> and his <u>staff</u> seemingly can't find the (" Brown 8 X 10 Envelopes") petitioner needs to mail out his remaining litigations to the Court here and the Respondents <u>Michael J. Gaines</u>, <u>Et Al.</u>, Chairman, United States Parole Commission and Warden <u>Fred E. Figueroa</u>, petitioners Custodian.

Petitioner has indeed suffered injury by having had to wait all this time, just to mail out his completed litigations to this Honorable Court.

As this Honorable Court will not, that at the

(3)

sixth of petitioners filings), this matter was view as a civil rights petition even though petitioner sought access to the Great Writ of Habeas Corpus, 28 U.S.C. §2241 (a). Thus, petitioners pleadings for the most part list subtitle names Plaintiffs and Defendants, had petitioner been provided the appropiate ("Brown 8 X 10 Envelopes") as origionally acquested, the subtitles of Plaintiffs and Defendants could have been amended timely to Petitioner and Respondents. Thus, injury occurs when the ("Brown 8 X 10 Envelopes") needed to mail out petitioners litigations to the Court timely, are delayed because Respondent Warden <u>Fred E. Figueroa</u>, Costodian of petitioner, is playing cat and mouse games by withholding the ("Brown 8 X 10 Envelopes") petitioner needs desperatly to mail out his litigations to this Honorable Court and any penalty for late filings)

(4)

Should be blamed on Respondent Warden <u>Fred E. Figueroa</u>, Custodian of petitioner and Warden of C.C.A. (D.C.).

The Court has constantly emphasized the fundamental importance of the writ of habeas corpus in our constitutional scheme. And the Congress of the United States has demonstrated its solicitude for the vigor of the Great Writ. The Court has steadfastly insisted that 'there is no higher duty than to maintain it unimpaired.' <u>Bowen V. Johnston</u>, 306 U.S. 19, 26, 59 S.Ct. 442, 446, 83 L.Ed. 455 (1939).

Since the basic purpose of the writ is to enable those unlawfully incarcerated ("As the case here presents,") to obtain their freedom, it is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed.

For example, the Court has held that a State may not validly make the writ available only to prisoners who could pay a $4.00 filing fee. <u>Smith v. Bennett</u>, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed. 2d 39 (1961). And it has said on rather insisted that, for the indigent as well as for the affluent prisoner, post-conviction proceedings must be more than a formality. <u>See</u> <u>Long v. District Court</u>, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed. 2d 290 (1966). <u>Cf.</u> <u>Griffin v. Illinois</u>, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

Thus, Warden <u>Fred E. Figueroa</u>, Custodian of petitioner, has impeded, hindered, frustrated, delayed petitioners ability to mail-out time respondes because said Warden <u>Fred E. Figueroa</u>, C.C.A. (D.C.) Warden and petitioners Custodian, has withheld the needed ("Brown 8 X 10 Envelopes") petitioner has needed for weeks forwhich falls upon deft ear's to mail-out his litigations to this Honorable Court. <u>See</u> <u>Ex parte Hull</u>, 312 U.S.

(6)

546, 61 S.Ct. 640, 85 L. Ed. 1034 (1941), this Court has formally held that such Abridgements orchestrated here by Warden Fred E. Figueroa, Custodian respondent, that impair petitioner's right to communicate and litigate to the Court must not faulter. 312 U.S. at 549, 61 S.Ct. at 642. Cf. Cochran v. Kansas, 316 U.S. 255, 257, 62 S.Ct. 1068, 1069, 86 L.Ed. 1453 (1942).

If not for petitioners Counsel Ms. Vida B. Johnson, all of petitioners completed litigations would never have reached this Honorable Court without her help. That cannot continue, nor is it appropiate for petitioner to have too continue seeking out-side help just to gain the envelopes needed to communicate and litigate with this Honorable Court. The only thing Warden Fred E. Figueroa, Custodian of petitioner, understands is a Court Order demanding or Ordering him to forfill

(7)

petitioners request for those ("Brown 8 X 10 Envelopes")

and plastic folders that are see through which are

certainly no security threat, if anything they provide

clear vision of whats inside them to keep Institutional

Staff from throwing petitioners litigations everywhere,

on some make-believe security check.

Based upon these facts petitioner needs an

expidited Court Order to curtail these impedements,

delays, excuses in the staff's failures in providing

despertly need materials to mail-out our litigations

to this Honorable Court. Otherwise, under the

Criminal Justice Act, Et Seq., petitioner respectfully

request the appointment of a law firm to further

(8)

proceed in order to over-come Respondent

Warden Fred E. Figueroa, Custodian of petitioners

failures in provided the tool's needed to mail-out

petitioners litigations to the Court, so as to prevent

the mishap's and denials when petitioner was housed

on Medical Unit 82-15. See Matter of Community

Action for Legal Services, 26 A.D. 2d 354, 360, 274

N.Y.S. 2d 779, 787 (1966). Or the National Legal

Aid and Defender Association, or see Spaner,

Thorkelson, & Weiss, The Lay Advocate, 43 U. Det. L.

J. 493, 510-514 (1966) or the Late Johnny Cocerans

Law Firm or Hunter S. Labovitz's Law Firm,

(D.C. Bar No. 460178) Public Defender Service,

633 Indiana Avenue, N.W., Washington, D.C., 20004.

(202) 824-2540.                    (9).

The Misidentifications Of Petitioner
Orchestrated By Narrowmindedness
Of D.C. Metropolitan Police Creating
An Abnormal Highly Prejudicial
Scandalous Spectacle Where Petitioner
Was Placed In A On The Scene One
Man-Line-Up, While Handcuffed Behind
His BACK And Surrounded By Police

The fourth Amendment of the United States Constitution
guarantees the right of people to be secure in their persons
and protects them against unreasonable searches and seizures
by police. U.S. Const. Amend. IV.

In the D.C. Superior Court Criminal Case F-00041-05,
United States of America V. Adrian Williams, dismissed with
prejudice, June 1, 2005, A.D., before the Honorable D.C. Superior
Court Judge Holeman.

A. The petitioner, Mr. Williams-et, was seized
when he was stopped unjustifiably and held by police
officers.

(10)(8)

A seizure for Fourth Amendment purposes occurs when a reasonable person, innocent of any crime, would not feel free to walk away from the police. Smith v. United States, 558 A. 2d 312, 314 (D.C. App. 1989)(en banc); United States v. Mendenhall, 446 U.S. 544, 554 (1980).

The petitioner, Mr. Williams-El, was seized in this case when he was stopped by a police officer, accused of a rape and handcuffed and slamed to the hood of a police car while walking to a bus stop. Prophet v. United States, 207 A. 2d 1087 (D.C. 1992). The petitioner, Mr. Williams-El, certainly did not feel free to move when he was confronted in that way. The petitioner, Mr. Williams-El, was effectively under arrest when stopped by the police. See e.g. Keeter v. United States, 635 A. 2d 903, 907 n. 10 (D.C. App. 1993).

B.    Police had neither probable cause nor reasonable articulable suspicion to seize petitioner, Mr. Williams-El.

(11)

In order for a seizure to be constitutional, the police must have had probable cause to believe that the petitioner, Mr. Williams-El, had committed a crime. See Hayes V. Florida, 470 U.S. 811 (1985). Dunaway V. United States, 442 U.S. 200 (1979). At the very least, police must have had a reasonable articulable suspicion to legally stop him for investigation. See Terry V. Ohio, 392 U.S. 1 (1968).

Here, the arresting officers had neither probable cause nor reasonable suspicion to justify the seizure of petitioner, Mr. Williams-El. The petitioner, Mr. Williams-El, was attacked and arrested by police almost an hour after the alleged incident. The officer's decision to stop this petitioner, Mr. Williams-El, was based on a honorably vague description that in many ways didn't come even close to matching this petitioner, Mr. Williams-El.

(12)

As a matter of Law, the description provided in this case: Format D.C. Superior Court Criminal Case F-00041-05, was totally insufficient to create either probable cause or reasonable, articulable suspicion to justify the stop. A description containing only scarce, general or vague information cannot justify the stop; and or seizure. In re A.S., 614 A. 2d 534, 538-39 (D.C. 1992); Bryant V. United States, 559 A. 2d 1107 (D.C. 1991); Brown V. United States, 590 A. 2d 1008 (D.C. 1991). The Court of Appeals stated that "descriptions applicable to Large numbers of people will not support A finding of probable cause." Id. At 1017. The court further ruled that the defendants' motion to suppress should have been granted because the radio run did not even support A finding of reasonable articulable suspicion to seize Brown under Terry. Id. At 1023.

(13)

Note: 1) Here, Police chased away petitioners, Mr. Williams-El, two elderly white eyewitnesses, whom attempted to alert police that they had grabed the wrong man, but police threaten them to get away from the scene of petitioners, Mr. Williams-El, illegal and unconstitutional stop, arrest and seizures, to keep from witnessing petitioners, Mr. Williams-El, set-up by police.

Note: 2) This was clearly a case of ("racial profiling") orchestrated by police.

The basis of that determination is based upon the eyewitnesses accounts of the alleged preparators description. Fact: Both government eyewitnesses stated that the preparator was 6'4" or 6'5" inches tall, the petitioner is only 5'10" tall... the preparator weighted between 170 to 180 pounds... the petitioner at that time weighted 235 pounds... the preparator was extreemly dark complexion... the petitioner is medium brown... the preparator was listed as 25 to 28 years old...

(14)

petitioner is 55 years of age... the perpetrator had no facial hair... petitioner has a salt and peppered beard.

There was no way police could justify such a screw-up, this was clearly a case of ("racial profiling,") that led to petitioners, Mr. Williams-EL, illegal stop, beating, arrest and seizure. See Id. At 1018 (Discrepancy in description is a negative factor).

Because petitioner, Mr. Williams-EL, arrest was a violation of his Fourth Amendment rights, the fruits of that illegal arrest must be suppressed. See Wong Sun, 371 U.S. 471, 484-88. The identification, statements and evidence of petitioner, Mr. Williams-EL, are fruits of his illegal arrest. See United States v. Bryant, 599 A. 2d 1107, 1112 (D.C. 1991).

Note: 3) The petitioner, Mr. Williams-EL, was

(15)

never made aware of his <u>Miranda</u> rights.

The government may not use statements "stemming from custodial interrogation of the petitioner, <u>Mr. Williams-el</u>, unless it demonstrates the use of procedural safeguards effective to secure the privilege against self incrimination." <u>Miranda V. Arizona</u>, 384 U.S. 436 (1966).

In this case, petitioner, <u>Mr. Williams-el</u>, was <u>surrounded by police</u>, <u>beaten</u>, having his <u>head slammed into the hood of a police vehicle</u> ("<u>without any struggle or attempt to flee</u>;") petitioner, <u>Mr. Williams-el</u>, was <u>handcuffed behind his back</u> and placed under arrest. Any statement made under such <u>duress</u> and without <u>procedural safeguards</u> clearly violated <u>Miranda</u>, Id. at 476.

<u>See Also</u> <u>Columbe V. Connecticut</u>, 367 U.S. 569, 607 (1961), <u>Arizona V. Fulimante</u>, 499 U.S. 274, 288 (1991); <u>United States V. Thomas</u>, 595 A. 2d 980, 981 (D.C. 1991).

<u>See</u> <u>Beasley V. United States</u>, 512 A. 2d 1007 (D.C. 1986),

(16)

Lego V. Twomey, 404 U.S. 477 (1972); Hawkins, 304 A. 2d at 282; Greenwald V. Wisconsin, 390 U.S. 519, 521 (1968); Butler V. United States, 614 A. 2d 875, 879-881 (1992).

See e.g.; Mincey V. Arizona, 437 U.S. 385, 396-402 (1978); Thomas, 595 A. 2d at 980.

Note: 4) The given identification of the actual preparator of the crime, clearly wasn't that of this petitioner, Mr. Williams-El. See Cannon V. Alabama, 558 F. 2d 1211 (5th Cir. 1977), Cert. denied, 424 U.S. 1087 (1978), and the identity of that party, Gibson V. United States, 566 A. 2d 473 (D.C. 1989); Grant V. Alldredge, 498 F. 2d 376 (2d Cir. 1974).

See Also Faessell V. United States, 380 A. 2d 1382, 1385 (D.C. 1977), Cert. denied, 439 U.S. 931 (1978). See Also Gibson V. United States, 566 A. 2d 473 (D.C. 1989); Jackson V. Wainwright, 390 F. 2d 288 (5th Cir. 1968).

Note: 5) The white CANVAS bag that WAS droped by the assailents or prepacators when they ran into this petitioner, Mr. Williams-El, while fleeing from police, police never thought to pursue them, rather they grabed this innocent petitioner, Mr. Williams-El, whom WAS not fleeing from police but simply walking towards the bus stop to keep his Hospital appointment. Whatever items were stolen by the fleeing prepacators, this petitioners, Mr. Williams-El, ("fingerprints") never came up, or any of the allege ~~and~~ stolen items. Police simply gave petitioner, Mr Williams-El, the droped white canvas bag that the prepacators droped when they ran into petitioner, Mr. Williams-El. Had police not threaten and chased off petitioners, Mr. Williams-El, "two white elderly male eyewitnesses," the matter could have been cleaned up at the scene and we wouldn't be going through all this today.          (18)

Note: 6) Once police lied About why they stoped

petitioner, Mr. Williams-El, on a police false claim of rape.

Police Kept right on lying! Police lied At petitioner,

Mr. Williams El, "Preliminary Hearing" before the D.C.

Superior Court in formal Criminal Case F-00041-05,

they lied before the Grand Jury of the D.C. Superior

Court in formal Criminal Case F-00041-05, to help the

government gain its illegal indictment against petitioner,

Mr. Williams-El, which defense counsel caught the

"Key government Arresting police officer" under cross-

examination finally admitted he had lied on this

petitioner, Mr. Williams-El.

See United States V. Agurs, 427 U.S. 97, 103, 96 S.Ct.

2392, 2397, 49 L. Ed. 2d 342 (1976); Giglio V. United States,

405 U.S. 150, 153, 92 S.Ct. 763, 765, 31 L. Ed. 2d

104 (1972); United States V. Bagley, 473 U.S. 667,

(19)

678-80, 105 S.Ct. 3375, 3381-82, 87 L. Ed. 2d 481 (1985)("[D]eliberate deception of the court by the presentation of false evidence is incompatible with rudimentary demands of justice" And a resulting conviction must be set aside "if there is any reasonable likelihood that the false testimony could have effected the jury verdict.") See Also Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L. Ed. 214 (1942), "(t)he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Id. At 269, 79 S.Ct. At 1177. See Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L. Ed. 2d 1217 (1959). Therefore, Thereafter in Brady v. Maryland, 373 U.S. At 87, 83 S.Ct. At 1197, held that suppression of material evidence justifies A new trial "irrespective of the good faith or bad faith of the prosecutor." See American Bar Association, Project on Standards for

(20)

Criminal Justice, Prosecution Function and the Defense Function § 3.11(A).

Wherefore, the Respondent's Michael J. Gaines, Et Al., Chairman, United States Parole Commission is attempting to further "solicite false evidence" from the "formal perjurious arresting police officer" in formal D.C. Superior Court Criminal Case F-00041-05, to further threaten, re-peal, revoke petitioner, Mr. Williams-El, "conditional liberty interest," by calling upon said formal perjurious. "perjurious arresting police officer" to testify under oath at petitioner, Mr. Williams-El, parole revocation hearing set-forth for August 22, 2005, A.D., at 9:00 A.M. Of all the scatterbrained, bias, prejudice and preconception ideas's to undertake to deny petitioner, Mr. Williams-El, "conditional liberty interest,"

Respondent's Michael J. Gaines, Et Al, Chairman, United States Parole Commission clearly demonstrates his contempt for justice and fairness by soliciting more false evidence to deny petitioner, Mr. Williams-El, his "Conditional Liberty interest." That is a clear sign of the old Jim Crowism in full effect here.

Respondent's want a scapegoat here, nothing more, nothing less, And they're hoping this Honorable Court ignor's their illegal and Unconstitutional scandalous Acts.

To willfully, Knowingly participate in the solicitation of false evidence violates the United States Parole Commission regulations: 28 C.F.R. § 2.98 (A)(2). 28 C.F.R. § 2.101 (A). See Also Morrissey V. Brewer, 408 U.S. 471, 484-86, 92. S.Ct. (2593) (1972).

In Long V. Gaines, 167 F. Supp. 2d 75 (D.C 2001),

the General Counsel <u>Michael Stover</u>, for the United States Parole Commission, when presented with this precise issue, stated to the Court that the satisfactory evidence standard is the same as that of probable cause.

> "I think that it is absolutely clear
> that as we have defined satisfactory
> evidence, and in fact the Chairman
> said so in a published regulation,
> that the two are equivalent."

Statement of General Counsel <u>Michael Stover</u>, 7/16/01 Tr. At 83.

It was troubling to the Court in <u>Long</u> v. <u>Gaines</u>, 167 F. Supp. 2d 75 (D.C. 2001), that the Commission's interpretation of this standard is directly contrary to the explanation provided in the Commission's own handbook and now, what has taken place here with this petitioner, <u>Mr. Williams Et</u>, case before this Honorable Court.

(23)

The question before this Honorable Court is clear:

Is probable cause founded upon knowingly soliciting false evidence, in the subpoenaing of the (same) perjurious formally arresting police officer, whom lied under oath at petitioners Probable Cause Hearing in formal D.C. Superior Court Criminal Case F-00041-05, lied again before the Grand Jury of the Superior Court in formal D.C. Superior Court Criminal Case F-00041-05 dismissed with prejudice on petitioners scheduled trial date, June 1, 2005, A.D., yet. Respondents Michael J. Gaines, Et Al., Chairman, United States Parole Commission, and his agents, Et Al., founded their probable cause upon the knowing use of false evidence to seek their warrant against petitioner

(24)

, Mr. Williams-El, for parole violation and

now seek to further promote more knowingly

solicitation of false evidence to deny petitioner,

Mr. Williams-El his "constitutional conditional

liberty interest" not violate the due process clauses

of the Fifth Amendment and the Bill of Rights?

If this Honourable Court is of the opinion that yes,

Respondents have violated petitioners federally protected

constitutional rights, then that this Honourable

Courts decisions be expedited forthwith; and

that the United States Marshals insure that

petitioners release comes immediately since

Respondents have a long history in delaying

prisoner court order releases.

(25)

We, the (District of Columbia Black population) are systematically labled in every aspect of the United States Parole Commission and the United States Federal Bureau of Prisons as the "renegade niggers" whom refused to assume the "bow-down tradition of our forefathers" to our allege "white owners," We are the so-called allegedly "bad-apples" of their formal "plantations", and we are "hunted," "stalked," and "rooted-out" and "branded" in this so-called modern day society as the "(District of Columbia renegade niggers" whom refused to adcept the "bow-down mentality" of our forefathers. It is these concept's which have been instilled in the hearts and minds of our jailures, the United States Parole Commission and United States Federal Bureau of Prisons since their conceptions. Their only differences today, is the indoctrinations and utilazations of modern day ("house niggers") to weld the whips and chains of

(26)

Jim Crowism concepts against their own race, whereas instead of only "white faces" welding the whip's and chains, we are systematically targeted and hunted by our own race similar to the formal Apartheid (South African) system that utilised African Black's to beat, hunt, stalk their own race which was a utter catastrophe of inhumaneness that caused the World to take notice of the racist extreemism of Apartheid and its deplorable treatment of Black Africans. Here we are again, in the United States of America after over 700 years of slavery, brutality, re-indoctrinations after re-indoctrinations, into the Jim Crow concepts orchestrated by a racist extreemist similar to the old Apartheid (South African) concepts in a modern day exploration of Blacks, esspecially District of Columbia Black Parolees engaged in the "hunt" to destroy us

(27)

And each other any way they can to keep the finger-pointed at someone other than the proprietors and orchestrators of this conspiracy like any preconceived racist objective in turning a race of people against each other as we're witnessing today.

Nevertheless, it is the American way of white America in handling Black African Americans in this modern day society which we may never catch-up to it's explosive technological advances because we're underminded at every step of the process. Needless to say the United States Parole Commission has indoctrinated numberious ("house niggers") under the old Jim Crow ideologies to allow our own race to do their "dirty-work", but the concepts and racist polices and regulations on their face appear humane, but in practice these preconceived regulations of fairness are merely make-up's, but in actual

(28)

practice they are the undisclosed heinous concepts of Jim Crowism in our modern day society.

Here, the United States Parole Commission has demonstrated their _racist policies_ and _regulations_ by "soliciting knowingly false evidence" to _deny_ petitioner, _Mr. Williams-El_, his "conditional liberty interest" without "valid due process of law." Not even the formal "D.C. Board of Parole," with its "haphazardly bias preconceived notions," would have not been so _closed-minded_ as to "solicite knowingly false evidence" as the United States Parole Commission has done to try in justify petitioners, _Mr. Williams-El_, _detention_ by "soliciting the (same) perjurious police officer" in formal D.C. Superior Court Criminal Case _F-00041-05_, to have him allegedly _testify under oath_ once more to satisfy

(29)

An allegedly "preponderence of evidence standard"
yet, all the while ("promoting") and ("soliciting
knowingly false evidence") to further entangle this
petitioner, Mr. Williams-El, in their web of deception and
lies, that threaten his "conditional liberty interest,"
petitioner, Mr. Williams-El, was afforded prior to his
illegal and unconstitutional stop, beating, arrest and
seizures in violation of petitioners, Mr. Williams-El,
Fourth and Fifth Amendment rights of the United States
Constitution in formal D.C. Superior Court Criminal Case
F-00041-05. See Napue V. Illinois, 360 U.S. 264 (1959).
See Also Mooney V. Holohan, 294 U.S. 103 (1935); Matter of
C.B.N., 499 A. 2d 1215 (D.C. 1985); United States V.
Brooks, 296 U.S. App. D.C. 219, 966 F. 2d 1500 (1992).
Sherer V. United States, 470 A. 2d 732 (D.C. 1983)

(30)

<u>Cert.</u> <u>denied</u>, 469 U.S. 931 (1984)

<u>See</u> <u>Ex parte Bollman</u>, 4 Cranch 75, 2 L. Ed. 354 (1807).
<u>Ex parte Burford</u>, 4 Cranch 448, 2 L. Ed. 495 (1806).

<u>See</u> <u>Johnson v. United States</u>, 333 U.S. 10, 13-14, 68 S. Ct. 367,
369, 92 L. Ed. 436 (1948); <u>Wong Sun v. United States</u>, 371 U.S.
471, 479-482, 83 S. Ct. 407, 412-414, 9 L. Ed. 2d 441 (1963),
<u>Terry v. Ohio</u>, 392 U.S. 1, 20-22, 88 S. Ct. 1868, 1879-1880,
20 L. Ed. 2d 889 (1968).

<u>See</u> R. Goldfarb, Ransom 32-91 (1965); L. Katz, Justice
Is the Crime 51-62 (1972).

<u>See</u>, e.g., 18 U.S.C. §§ 3146 (A)(2), (5).

<u>See</u> <u>Carroll v. United States</u>, 267 U.S. 132, 149, 45 S. Ct.
280, 283, 69 L. Ed. 543 (1925).

<u>See</u> 2 M. Hale, Pleas of the Crown 77, 81, 95, 121 (1736).
2 W. Hawkins, Pleas of the Crown 116-117 (4th ed. 1762).

(31)

_See Also Kurtz v. Moffitt_, 115 U.S. 487, 498-499, 6 S.Ct. 148, 151-152, 29 L. Ed. 458 (1885).

_See Also_ 1 M. Hale, _supra_, at 583-586; 2 W. Hawkins, _supra_, at 116-119; 1 J. Stephen, History of the Criminal Law of England 233 (1883).

Here, the Writ of habeas corpus is appropiate: _See_ 2 W. Hawkins, _supra_, at 112-115; 1 J. Stephen, _supra_, at 243; _See Ex parte Bollman_, 4 Cranch, at 97-101.

This practice furnished the model for criminal procedure in America immediately following the ~~adop~~ adoption of the Fourth Amendment. _See Ex parte Bollman, supra_; _Ex parte Burford_, 3 Cranch 448, 2 L. Ed. 495 (1806); _United States v. Hamilton_, 3 Dall. 17, 1 L. Ed. 490 (1795), and there are indications that the Framers of the Bill of Rights regarded it as a model for a "reasonable"

(32)

Seizure. *See* *Draper v. United States*, 358 U.S. at 317-320, 79 S.Ct. at 335-336 (Douglas, J., dissenting).

*See Also* *Albrecht v. United States*, 273 U.S. 1, 5, 47 S.Ct. 250, 251, 71 L.Ed. 505 (1927), the Court held that an arrest warrant (as presented by Respondents *Michael J. Gaines, Et Al.*, Chairman, United States Parole Commission and his *Agent's et al.*, issued solely upon a United States Attorney's information was invalid because the accompany affidavits' were defective.

Here, we feel that the *pre-mature warrant determinations* recommended by petitioners formal parole officer *Sonya Atkinson* and her *Supervisor* for the Court Services and Offender Supervision Agency for the District of Columbia knowing that the "*formal arresting police officer*" was "*caught lying in court against this petitioner*" certainly couldn't meet "*probable cause on false evidence.*"

The United States Parole Commission assumed the powers, duties and jurisdiction of the District of Columbia Board of Parole on August 5th, 2000, A.D., pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, § 11231 (A)(2), 111 Stat. 712, 745 ("Revitalization Act"). The Commission's new responsibilities included the authority to revoke paroles and to modify the conditions of parole for D.C. Code offenders. The United States Parole Commission replaced the parole revocation procedures used by the D.C. Board of Parole with new parole regulations that have included the solicitation of false evidence to establish their so-called preponderance of evidence, i.e., blind prejudice, to justify violations of "District of Columbia BLACK

(34)

"Parolee's," As this petitioner, Mr. Williams-El,

A D.C. Code offender released formally on "Special

Parole Supervision." Here, the petitioner, Mr. Williams-El,

Never signed any agreement with the United States Parole

Commission to be A party of their paroling Jim Crowism

circuit of blind justice, where the United States Parole

Commission since it's conception has never Afforded

Black's "fair-play", i.e., "fair determination's" within

their "MAZE of racial profiling." That is esspecially

So among "District of Columbia Black Parolee offenders,"

where the United States Bureau of Prisons coupled with

the United States Parole Commission has always utilized

seperation system to classify prejudically their racist

views and preconceptions of "District of Columbia Black

Parolee's," since District of Columbia Black Parolee's

entered their system of Jim Crowism.

(35)

The United States District Court Is Empowered
To Order The United States Attorney For The
District Of Columbia To forthwith Turn-Over
All Of Petitioners Illegally And Unconstitutionally
Seized Property From Formal D.C. Superior Court
Criminal Case F-00041-05 Since Respondents
Open-That-Door By Subpoenaing The
Formal Perjurious Arresting Police Officer Whom
Admitted He Lied Against This Petitioner In
Formal D.C. Superior Court Criminal Case F-00041-05
In Respondents Quest In Soliciting More False
Evidence To Deny Petitioner His Constitutional
Conditional Liberty Interest

(A) A "seizure" of property occurs when "there
is some meaningful interference with an individual's
possessory interests (As here), in that property."

(36)

United States V. Jacobenson, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656, 80 L. Ed. 2d 85. The language of the Fourth Amendment — which protects people from unreasonable searches and seizures of "their persons, houses, papers, and effects" — cuts against the novel holding below, and this Court's cases unmistakably hold that the Amendment protects property even where privacy or liberty is not implicated. See e.g., ibid.; Katz V. United States, 389 U.S. 347, 350, 88 S. Ct. 507, 510, 19 L. Ed. 2d 576. The United States Supreme Courts "plain view" decisions also make untenable the lower courts construction of the Amendment. If the Amendment's boundaries were defined exclusively by rights of privacy, "plain view" seizures, rather than being scrupulously subjected to Fourth Amendment inquiry, Arizona V. Hicks, 480 U.S. 321, 326-

(37)

327, 107 S. Ct. 1149, 1153-1154, 94 L. Ed. 2d 347, would not implicate that constitutional provision at all. Contrary to the Court of Appeals' position, the Amendment protects seizures even though no search within its meaning has taken place. *See*, e.g., *Jacobsen*, *supra*, 466 U.S. at 120-125, 104 S. Ct. at 1660-1663. Also contrary to that courts' view, *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443, does not require a court, when it finds that a wrong implicates more than one constitutional command, to look at the dominant character of the challenged conduct to determine under which constitutional standard it should be evaluated. Rather, each constitutional provision is examined in turn. *See*, e.g., *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393.

(38)

The fourth Amendment, made applicable to the States by the fourteenth Amendment, <u>Ker v. California</u>, 374 U.S. 23, 30, 83 S.Ct. 1623, 1628, 10 L. Ed. 2d 726 (1963), provides in pertinent part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. ...."

Thus, petitioner is <u>legally</u> and constitutionally entitled to the return of "<u>all</u>" his property, monitary property, i.e., (petitioners personal property that was illegally and unconstitutionally seized) and (petitioners monitary funds illegally and unconstitutionally seized), in formal D.C. Superior Court Criminal Case <u>F-00041-05</u>. Thus, the United States Attorney For The District of Columbia should be <u>Ordered</u> to forthwith turn-over "<u>all</u>"

(39)

of petitioners illegally and unconstitutionally seized

to petitioners counselor Ms. Vida B. Johnson, Staff Attorney, Public Defender Service For The District of Columbia, 633 Indiana Avenue, N. W., Washington, D. C., 20004; Telephone: (202) 824-2348 or (202) 628-1200.

Wherefore, based upon the facts presented here and hereto, petitioner moves this Honorable Court to grant him the relief sought herein.

This being the 16th day of August _____ 2005, A. D.

Adrian Williams-El

Adrian Williams-El, Petitioner
Federal No. 97648-131/D.C. D.C.# 162-518
C.C.A. (D.C.)
1901 "E" Street, S.E., E1B-20
Washington, D. C., 20003

(40)

# Sworn Declaration

I, _Adrian Williams-El_ , Federal No. 97648-131,
D.C.D.C. # 162-518, Being Of Sound Mind, Do Certify,
Verify, Swear Under Penalty of Perjury That The
Information And Statements Presented Here And Hereto
Are True And Correct To The Best Of My Knowledge
And As To That I Believe Them To Be True.
This being the _16th_ day of _August_ 2005, A.D.

_Adrian Williams-El_
Adrian Williams-El, Swearer
Federal No. 97648-131/D.C.D.C. # 162-518

(41)

## Certificate Of Service

This is to certify, verify that a true and correct copy of the foregoing motions were mailed postage pre paid by placing said in the Institutions Mail Box, addressed to: <u>Michael Stover</u>, General Counsel, United States Parole Commission, 5550 Friendship Blvd., Chevy Chase, Maryland, 20815, this 16th day of <u>August</u> 2005, A.D., and Warden <u>Fred E. Figueroa</u>, Custodian, Warden C.C.A. (D.C), 1901 "E" Street, S.E., Washington, D.C., 20003; this 16th day of <u>August</u> 2005, A.D.

<u>Adrian Williams-El</u>
Adrian Williams-El, Petitioner
Fed. No. 97648-131/D.C.D.C.#162-518
C.C.A. (D.C)
1901 "E" Street, S.E., E1B-20
Washington, D.C., 20003.

(42)

United States District Court
For The District Of Columbia

Adrian Williams-El, Pro Se- Petitioner
(Federal No. 97648-131 / D.C. D.C. # 162-518
C.C.A. (D.C.)
1901 "E" Street, S.E., E1B-20
Washington, D.C., 20003;

V.

Michael J. Gaines, Et Al., Chairman,
United States Parole Commission,
                                    Respondents;
        And
Warden Fred E. Figueroa, Custodian,
Warden C.C.A. (D.C.),
                            Respondent.

Civil Action No.
1:05-CV-1387

Orders

If Is This ___ Day of _____ 2005, A.D.,
So Ordered: 1) That Warden Fred E. Figueroa,
Custodian Of Petitioner Adrian Williams-El, Is
Hereby Ordered To Stop Hindering, Impeding,

(1)

Frustrating Petitioners Ability To Communicate
And Petition Ohin Honorable Court Freely Which
Cannot Be Done By Your Withholding The
(" Brown 8 X 10 Envelopes") Petitioner Has Repeatedly
Requested From Your Case Management Staff And
Your Grievance Lady Ms. Allen To No Avail.
You Are Ordered To Comply With The Provisions Set-
Forth In: Johnson V. Avery, 393 U.S. 483, 484,
489-490 (1969); e.g., Ex parte Hull, 312 U.S. 546,
547-549 (1941); e.g., Burns V. Ohio, 360 U.S. 252,
258 (1959); Griffin V. Illinois, 351 U.S. 12, 19
(1956), Smith V. Bennett, 365 U.S. 708, 709-
710 (1961), Wolff V. McDonnell, 418 U.S. 539 (1974).
You Are Further Ordered To Insure Ohat The
(2)

Petitioner, Mr. Williams-El, Gets Those ("Brown 8 X 10 Envelopes") He's Been Requesting Forthwith To-Day Along With The Clear Plastic Folders He Needs And Any Additional Law Library Time He Will Need To Prepare And Complete His Traverse To This Honorable Court To Complete The Dead-Line Set-Forth By This Honorable Court.

You Will Find-Out Whatever Additional Time He May Need To Complete His Traverse, Including Weekends Which Would Afford This Petitioner The Time He Needs To Complete This Task Without Obstruction Or Excuses By You Or Any Of Your Staff From This Time Forth.

If Is Also The Order Of This Court On _____ Day of _____ 2005, A.D., So Ordered:

(3)

That The United States Attorney For The District Of Columbia Is Ordered Forthwith To Turn Over ALL Of Petitioners Formally Illegally Seized Personal Property And Monitory Property From Formal D.C. Superior Court Criminal Case F-00041-05 To Petitioners Counselor Ms. Vida B. Johnson, Staff Attorney, Public Defender Service For The District of Columbia, 633 Indiana Avenue, N.W., Washington, D.C., 20004, Today.

Finally, It Is The Order Of This Honorable Court, This ____ Day of _____ 2005, A.D., That The Court Finds That Respondents Michael J. Gaines, Et Al., Chairman, United States Parole

(4)

Commission Has Violated Probable Cause Determinations In This Case By Your Willful Solicitation Of Knowingly False Evidence In Your Prejudicial Attempt To Deny Petitioner His Conditional Liberty Interest In Violations Of The Fourth And Fifth Amendments of the United States Constitution. The Commission In So Doing Violated Your Own Regulations Prejudically Coupled With The Violations Of The Bill of Rights of This Petitioner. The Court _Grants_ The Writ Of Habeas Corpus And Orders The Petitioners Release Forthwith. The United States Marshals Are Hereby _Ordered_ To Assist The Court In Carrying Out _Its Order_ That Petitioner Be Released Forthwith.

(5)

Signed: _____

Emmet G. Sullivan
United States District Court Judge

(6)