United States District Court
For The District of Columbia

Adrian Williams-El, Pro Se-Petitioner,
Federal No. 97648-131/@.C.D.C.#162-518
C.C.A. (D.C.) C.T.F.
1901 "E" Street, S.E., E1B-20
Washington, D.C., 20003;

V.

Michael J. Gaines, Et Al., Chairman,
Edward F. Reilly, Jr., Et Al.,
Cranson J. Mitchell, Et Al.,
John Simpson, Et Al.,
United States Parole Commission
5550 Friendship Blvd.
Chevy Chase, Maryland, 20815, Respondent's,

And,

Warden Fred E. Figueroa, Custodian,
Warden C.C.A. (D.C.) C.T.F.
1901 "E" Street, S.E.
Washington, D.C., 20003; Respondent;

Civil Action No.
1:05-CV-1387

(1)

The United States Attorney

United States Department Of Justice

555 Fourth Street, N.W.

Washington, D.C., 20001, Respondents.

## Notice Of Filing

The pro se-petitioner Adrian Williams-el, respectfully presents

to this Honorable Court: Petitioners Traverse. See Fed. R. Civ. Proc.

(Rules 6 (d)) and 7(b) et seq.

Regardless to whether Respondents file A response to this

Honorable Courts Show Cause Order, issued August 8th, 2005, A.D.,

petitioner forfills his legal obligations here, whether Respondents

Answer or not.

Petitioner still has recovered no word on whether the

formal Chairman of the United States Parole Commission

Michael Gaines has resigned or not, petitioner still

Addresses the General Counsel Michael Stover of the United

States Parole Commission and those members next in line to become Chairman, if infact _Michael J. Gaines_ has infact Resigned As Rumor has it.

Thus, the following is petitioners _traverse_...

Respectfully Submitted,

_Adrian Williams-El_
Adrian Williams-El, Pro Se-Petitioner
Federal No. 97648-131 / D.C.D.C. #162-518
C.C.A. (D.C.) C.T.F.
1901 "E" Street, S.E., E1B-20
Washington, (D.C., 20003.

This being the _12th_ day of _September_ 2005, A.D.

_Adrian Williams-El_
Adrian Williams-El, Pro Se-Petitioner
Federal No. 97648-131 / D.C.D.C. #162-518
C.C.A. (D.C.) C.T.F.
1901 "E" Street, S.E., E1B-20
Washington, D.C., 20003.

(3)

As a point not to be left out of argument, petitioner argues that the "warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official" has domain over the petitioner... See Rumsfeld v. Padilla, — U.S. —, 124 S. Ct. 2711, 159 L. Ed. 2d 513 (2004)(internal citations omitted).

One important exception to this 'immediate custodian rule' is that "when the Government moves a habeas petitioner after he or she properly files a petition naming their immediate custodian, the District Court retains jurisdiction and may direct the Writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." Id. 124 S. Ct. at 2721; Ex Parte Endo, 323 U.S. 283, 65 S. Ct.

(4)

208, 89 L. Ed. 243 (1944). The petitioner has listed Warden Fred E. Figueroa, as his Custodian, the Warden of the Correctional Treatment Facility in Washington, D.C., as one Respondent. At the time this petition was filed, the Petitioner is at C.T.F., being illegally and unconstitutional detained. Thus, should Respondent's attempt "any" trickery or rebellious deviousness, and transfer petitioner outside the territorial jurisdiction of this Honorable Court, per Ex Parte Endo, this Court retains jurisdiction despite Respondent's Retalitorial deviousness should they try their hand at Avoiding this Honorable Court, by transferring the petitioner.

Respectfully Submitted,

Adrian Williams-El

Adrian Williams-El, Pro Se Petitioner
Federal No. 97648-131/D.C.D.C# 162-518
C.C.A. (D.C.) C.T.F.
1901 "E" Street, S.E., E1B-20
Washington, D.C., 20003.

(5)

# Continuation Of Subject-Matter Jurisdiction

## Custody

Should Respondent's attempt to hide petitioner from this Honorable Court's territorial jurisdiction, petitioner moves this Honorable Court for extraterritorial application of the Habeas Corpus Statutes. *See Rasul V. Bush, supra,* At 2693-95 (rejecting government's attempt to construe *Johnson V. Eisentrager,* 339 U.S. 763 (1950) broadly to restrict extraterritorial application of habeas corpus statutes, construing *Eisentrager* narrowly based on factual context of case and decision's focus on "a constitutional entitlement of/to habeas corpus," and explaining that post-*Eisentrager* decisions have established that "the prisoner's presence within the territorial jurisdiction of the district court is not 'an

(5-A)

invariable prerequisite' to the exercise of district court jurisdiction under the federal statute . . . because' the writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody,' [and thus] a district court acts 'within [its] respective jurisdiction' within the meaning of §2241, §2243 as long as 'the custodian can be reached by service of process."')

See Also Rumsfeld V. Padilla, 124 S. Ct. 2711, 2719 (2004) ("we no longer require physical detention as a prerequisite to habeas corpus relief" : "our understanding of custody has broadened to include restraints short of physical confinement").

See Also e.g. Rasul V. Bush, 124 S. Ct. 2686, 2696 (2004)

(5-B)

Habeas Corpus

See Also Payton v. Rowe, 88 S. Ct. 1549 (1968),

Writ of habeas corpus is not static, narrow, formalistic remedy; its scope has grown to achieve purpose of protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty. 28 U.S.C.A. § 2241 (c)(3).

Writ of habeas corpus is procedural device for subjecting executive, judicial, or private restraints on liberty to judicial scrutiny. 28 U.S.C.A. § 2241.

Writ of habeas corpus, where available, assures among other things that prisoner may acquire his jailer to justify the detention under law. 28 U.S.C.A. § 2241.

Writ of habeas corpus, is both the symbol and guardian of individual liberty. 28 U.S.C.A. § 2241.

(5 B-1)

The Writ of Habeas Corpus is a procedural device for subjecting executive... See e.g., (Darnel's Case ["Five Knights' Case"] 3 How. St. Ta. 1-59 (K. B. 1627); Ex parte Milligan, 4 Wall. 2, 18 L. Ed. 281 (1866). The proceedings in (Darnel's Case are summarized in (D. Meador, Habeas Corpus and Magna Carta 13-16 (1966)..., or judicial... See e.g., Bushel's Case, Jones, T. 13, 84 Eng. Rep. 1123 (K. B.); Walker V. Wainwright, 390 U.S. 335, 88 S. Ct. 962, 19 L. Ed. 2d 1215 (1968)..., or private..., See e.g., Rex V. Clarkson, 1 Strange 444, 93 Eng. Rep. 625 (K. B. 1721); See Ford V. Ford, 371 U.S. 187, 83 S. Ct. 273, 9 L. Ed. 2d 240 (1962), restraints on liberty to judicial scrutiny.

(5B-2)

# Prejudicial Delay

It goes without saying, that Respondent's United States Parole Commission's delay of petitioner's release back to conditional release forthwith is an abuse of discretion in the Commission's failure to forthwith release me after the recommendations from it's own parole hearing revocation hearing examiner on August 22nd, 2005, A.D.

Such an abuse of the Commission's own procedural policies and regulations is a violation and prejudicial abuse of it's own discretion. See Apprendi V. New Jersey, Certiorari to the Supreme Court of New Jersey, No. 99-478. Argued March 28, 2000 -- Decided June 26, 2000.

(5-C)

Here, petitioner has always maintained that the rules, regulations, and policies manifested by the United States Parole Commission and its Chairman and other infra structure employee's are racially bias upon District of Columbia Black Parolee's.

Here, the racial bias and prejudical impact of these rules, regulations and policies orchestrated by the United States Parole Commission and its employee's is clearly Unconstitutional and violates both the Fifth Amendment's Due Process Clauses under the Federal Constitution but they also violate the Bill of Rights for Black's and people of color.

Such a spirit of oppression and tyranny orchestrated by these federal employee's is untrustworthy to humanity in this day and age, and should be deemed Unconstitutional in its exhibit and in deed. J. J. Story, Commentaries on the Constitution of the United States 540-541 (4½ ed. 1873).

(5-D)

## Habeas Corpus

While the Acts of congress concerning this Writ are not decisive, perhaps, as to what is a restraint of liberty, they are evidently framed in their provisions for proceedings in such cases on the idea of the existence of some actual restraint. Section 754, Rev. St., says the application for the Writ must set forth 'in whose custody he [the petitioner] is detained, and by virtue of what claim or authority, if known;' Section 755, that 'the Writ must be directed to the person in whose custody the party is;' Section 757, that this person shall certify to the Court or justice before whom the Writ is returnable, the true cause of the detention; and by Section 758, he is required 'at the same time to bring the body of the party before the judge who granted the Writ.'

(6)

All these provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary.

Respectfully Submitted,

_Adrian Williams-EL_

Adrian Williams-EL, Pro Se - Petitioner
Federal No. 97648-131 / D.C. D.C.# 162-518
C.C.A. (D.C.) C.T.F.
1901 "E" Street, S.E., EIB-20
Washington, D.C., 20003.

This being the 12th day of September ———— 2005, A.D.

_Adrian Williams-EL_

Adrian Williams-EL, Pro Se - Petitioner
Federal No. 97648-131 / D.C.Q. D.C.# 162-518
C.C.A. (D.C.) C.T.F.
1901 "E" Street, S.E., EIB-20

(7)

Washington, D.C., 20003.

## Sworn Declaration

I, _Adrian Williams-El_, Federal No. 97648-131/ D.C.D.C. #162-518, Being Of Sound Mind, Do Verify, Certify, Swear Under Penalty Of Perjury That The Information And Statements Made Here By Me Are True And Correct To The Best Of My Knowledge And As To That I Believe Them To Be True.

_Adrian Williams-El_

Adrian Williams-El, Swearee
Federal No. 97648-131/D.C.D.C. #162-518

This being the 12th day of September 2005, A.D.

## Certificate Of Service

I hereby certify, verify that a true and correct copy of The _Notice of Filing_ was mailed postage pre paid to: _Michael Stover_, General Counsel, United States Parole Commission, 5550 Friendship Blvd., Chevy Chase, Maryland, 20815, this

(8)

__ day of September _____ 2005; and Warden Fred E.

Figueroa, Custodian, Warden C.C.A. (D.C.) C.T.F, 1901 "E" Street,

S.E., Washington, D.C. 20003, this 12th day of September _____ 2005,

A.D., and the United States Attorney For the District of Columbia,

United States Department of Justice, 555 Fourth Street, N.W.,

Washington, D.C. 20001, this 12th day of September 2005, A.D.

Adrian Williams-El
Adrian Williams-El, Pro Se-Petitioner
Federal No. 97648-131 / D.C.D.C. #162-518
C.C.A. (D.C.) C.T.F.
1901 "E" Street, S.E., E1B-20
Washington, D.C., 20003.

(9)

The Honorable Clerk

Of The Honorable United States

District Court Judge Emmet G. Sullivan

September 12th, 2005, A.D.

Civil Action No.

1:05-CV- 1387

Dear Honorable Clerk:

I am the pro se - petitioner Adrian Williams-El, Federal No.

97648-131/D.C. D.C. # 162-518, in the above entitled cause before

your Honorable Court.

As I'm sure you've noted, that I've prepared and forwarded

my "Petitioner's Traverse" whether Respondent's Answer this Honorable

Court's Show Cause Order issued August 8th, 2005, A.D., requiring

Respondents to Show Cause within 30 days of the Court's Order

why the Writ of habeas corpus under 28 U.S.C. § 2243 should

not issue. As I've informed this Honorable Court that on

August 22nd, 2005, A.D., the United States Parole Commission

(1)

held its revocation of parole hearing against me for which I came out *victorious* and I was *recommended a expidited release* and *return to full formal status of conditional parole*. The "*72*" hour's for *re-instatement* and *release has expired*, and again Respondent's stand in violation of *due process of law* in violation of My Fifth Amendment rights under the United States Constitution. Something must be done to *curtail* the United States Parole Commission's *repeated deregard* to their own *procedural* policies and *regulations*, that are Constitutionally violative of the Due Process Clause of the Fifth Amendment. *See Apprendi V. New Jersey*, Certiorari to the Supreme Court of New Jersey, No. *99-478*, Argued March 28th 2000 -- Decided June 26th 2000. In the interest of procedural fairness, delay's such as this are deficiently prejudical because they *degenerate* a parolee's standing in the Community, his or her standing with their

(2)

families and even employee's suffer, sometimes horribly and the longer it takes to repeatedly ("right the prejudical wrong's") orchestrated by the United States Parole Commission's employee's that have clearly developed the serious habit of repetitiousness in their indifference to their own rules, regulations and policies, the fear of non-reprisal for their deliberate indifferences to their own rules, regulations and policies in essence gives them uppity attitude of being above the law, for they fear no consequence for their prejudicial indifference in adhering to their own rules, regulations and policies; and their history dictates this very concept. That is why we have this revolving-door Atomizer Atmosphere of repetitiousness in their indifference to parolee's, the greater the lost to parolee's, the greater the opportunity will unfold for them, i.e., the parolee to fail and 99% of the time the greater the opportunity for them, i.e., parolee's

(3)

to return; And that is what the system itself counts on to put insurance in keeping their own jobs And maintaining Security in their trained profession. Thus, the longer the delay, the greater the damage caused, the greater the opportunity developes that the revolving-door Will stay in business. Thus, the greater the lost to the parolee, the greater that whatever positive footing he or she has gained in the Community and to family Will be wiped out. This degenerating cycle, esspecially aimed at black people And people of color is A Mass conspiracy Orchestrated by the political institutions We are forced to pay our taxes to. We're the last on the totem-pole to gain ANY positive ground on positive footing upon the totem-pole of life, and it is by design the old Jim Crow Way is alive And Active today.

(3-A)

The current policies, rules, regulations regarding forthwith re-instatements Once A parolee survives A parole revocation hearing to being victorious over federal or State Revocations Must be released immediately to try in repair the damage suffered by him or her illegal detainment.

These illegal and Unconstitutional delays Are by design, And need to be uprooted for their prejudicial impact upon Black parolee's And people of color.

As I'm sure this Honorable Court Knows, that slow justice delayed is basically infact no

(3-B)

justice at all. These delays by the Respondent's United States Parole Commission are UNREASONABLE and prejudicial in action and in deed. See Also United States ex rel. Fitzpatrick V. United States Parole Commission, 444 F. Supp. 1302, and the canopy of cases dealing with prejudicial delays. Thus, should petitioner be released to conditional parole, the Court may contact petitioner at: 607 Condon Terrence, S.E., Washington, D.C., 20032, because this matter is far from over. This way, should Respondent's claim that petitioner's release quashes the writ and the allegations made therein would be prejudically wrong, this matter will remain alive until new policies and regulations are in place and until petitioner regains all of his personal property and monitary property sought by motion in this action, from formal D.C. Superior Court

(4)

Criminal Case F-00041-05, as Respondent's ("open-the-door") for petitioner to seek his property return within the federal forum, by soliciting the (same) perjurious police officer from formal D.C. Superior Court Criminal Case F-00041-05, to be a witness for the United States Parole Commission's case against this petitioner. We also question how the United States Parole Commission gained it's warrant against petitioner, on the foundation of knowingly perjurious testimony of the formal arresting police officer in formal D.C. Superior Court Criminal Case F-00041-05, does the Commission's probable cause touchstone upon perjurious testimony or knowingly false allegations?

See Michael Stover's comments, General Counsel, United States Parole Commission in: Long V. Gaines, 167 F. Supp. 2d 75 (D.C. 2001)(7/16/01 Tr. at 83)(Michael Stover,

(5)

the Commission's General Counsel, when presented with this precise issue, stated to the Court that the satisfactory evidence standard is the same as that of probable cause. "I think that it is absolutely clear that as we have defined satisfactory evidence, and in fact the Chairman said so in a published regulation, that the two are equivalent." Statement of Michael Stover, 7/16/01 Tr. at 83).

Wherefore, how could the Commission gain ground to issue a warrant for parole violation upon the foundation of knowingly false allegations and perjucious testimony against petitioner?

Unless of course, the prosecutor utilized it's tool, i.e., the United States Parole Commission to undermind the Honorable D.C. Superior Court Judge Holeman's decision to release petitioner on bond?

These questions are indeed relevant to the proceedings before this Honorable Court.

(6)

Was this measure used to Affront the Honorable Judge Holeman's discretion that overrode prosecutor's intent to have the Court deny petitioners release on bond?

Clearly, it wasn't until after petitioners release on bond, and that petitioner was attempting to locate him two ("white eyewitnesses") whom were threaten and run off by police so that they could successively frame petitioner in formal D.C. Superior Court Criminal Case F-00041-05, that the United States Parole Commission decided to have petitioner "Arrested" for Parole Violation knowing before hand that police had given false statements against petitioner and one police officer Admitted he lied under oath in a scheme to frame petitioner. Thus, here, it's clear that the United States Parole Commission was utilized as the prosecutor's tool, to Affront the Honorable D.C. Superior Court Judge Holeman's discretion to release petitioner

(7)

on bond.

Respectfully Submitted,

_Adrian Williams-El_
Adrian Williams-El, Pro Se - Petitioner
Federal No. 97648-131 / D.C.D.C.# 162-518
C.C.A. (D.C.) C.T.F.
1901 "E" Street, S.E., EIB-20
Washington, D.C., 20003.

Sworn Declaration

I, _Adrian / Williams-El_, Federal No. 97648-131/
D.C.D.C.# 162-518, Being Of Sound Mind, Do Verify, Certify,
Swear Under Oath In Regards To Perjury That The Information
And Statements Made Here By Me Are True And Correct
To The Best Of My Knowledge As To That I Believe Them To
Be True. _Adrian Williams-El_
Adrian Williams-El, Swearee
Federal No. 97648-131 / D.C.D.C.# 162-518
This Being the 12th day of September, 2005, A.D.

(8)

Adrian Williams-el

Adrian Williams-El, *Pro Se* - Petitioner
Federal No. 97648-131/D.C. D.C.# 162-518
C.C.A. (D.C) C.T.F.
1901 "E" Street, S.E., E1B-20
Washington, D.C., 20003.

## Certificate Of Service

I hereby certify, verify that a true and correct copy of this message was mailed postage pre paid to: Michael Stover, General Counsel, United States Parole Commission, 5550 Friendship Blvd., Chevy Chase, Maryland, 20815; this 12th day of September 2005, A.D., and Warden Fred E. Figueroa, Custodian, Warden C.C.A. (D.C.) C.T.F., 1901 "E" Street, S.E., Washington, D.C., 20003; this 12th day of September 2005, A.D., and the United States Attorney for The District of Columbia, Department of Justice, 555 Fourth Street, N.W., Washington,

(9)

D.C., 20001; this 12th day of September 2005, A.D.

Adrian Williams-El

Adrian Williams-El, Pro Se - Petitioner
Federal No. 97848-131 / D.C.D.C. # 162-518
C.C.A. (D.C.) C.T.F.
1901 "E" Street, S.E., E1B-20
Washington, D.C., 20003

(10)

United States District Court
For The District of Columbia

Adrian Williams-El, Pro Se- Petitioner,
Federal No. 97648-131/@.C.D.C. #162-518
C.C.A. (D.C.) C.T.F.
1901 "E" Street, S.E., E1B-20
Washington, D.C., 20003;

       V.

Michael J. Gaines, Et Al., Chairman,
United States Parole Commission
5550 Friendship Blvd.
Chevy Chase, Maryland, 20815, Respondents;

      And
Warden Fred E. Figueroa, Custodian,
Warden C.C.A. (D.C.) C.T.F.
1901 "E" Street, S.E.
Washington, D.C., 20003; Respondent.

Civil Action No.
1:05-CV-1387

(1)

## Petitioner's Traverse

Comes now, the pro se-Petitioner, Adrian Williams-El, Federal No. 97648-131 / D.C.D.C.# 162-518, whom moves this Honorable Court by Petitioner's Traverse. pursuant to the Habeas Corpus Act. Et Seq., And in Accords to 28 U.S.C. § 2243 And Fed. R. Civ. Proc. Rules 6 (d) And 7 (b). As grounds for this Remedy, petitioner Adrian Williams-El, Federal No. 97648-131 / D.C.D.C.# 162-518, respectfully states:

(A) This Honorable Court issued A Show Cause Order Upon the named Respondent's listed here pursuant to 28 U.S.C. § 2243 And Afforded Respondent's 30 days to Show Cause if there be why the Writ should not issue.

(2)

(B) Petitioner, whom thus far hasn't received any response thus far from Respondent's, alerted this Honorable Court that petitioner sought to file a <u>Traverse</u> to any in-coming response Respondent's may return.

On August 22nd, 2005; A.D., in or around 9:00 a.m., and 9:30 a.m., petitioner was presented before the United States Parole Commission's Revocation hearing board here at the C.C.A. (D.C.) C.T.F. facility. Petitioner's counsel Ms. <u>Vida B. Johnson</u>, Esq., Public Defender Service was present, alongwith petitioner's Parole Officer Ms. <u>Sonya Atkinson</u> an Adverse Witness for the United States Parole Commission and the Hearing Examiner whom conducted the Revocation hearing for the United States Parole Commission.

(3)

None of the other principle witnesses for the United States Parole Commission showed up at said hearing for the United States Parole Hearing.

The facts presented to the hearing examiner were the facts from petitioners illegal stop, arrest and seizure.

Further facts presented to the hearing examiner was the misidentification of petitioner as outlined that the assailent was 6'4" to 6'5" tall, weight 185 pounds, extremely dark completion, no facial hair. Petitioner is only 5'9" or 5'10" tall, weight 235 pounds, medium brown completion, salt and pepper beard. The assailent was around 22 to 25 years of age and petitioner is 56 years old, with conjested heart failure where petitioner can only move slowly.

Petitioners Parole Officer Ms. Sonja Atkinson stated

(4)

that petitioner had no technicals, never had any dirty urines, was never late or missed any appointments, never failed to report, was employed and took care of his family, was an essence a exceptional parolee whom she looked forward in having petitioner back out on parole.

See Hearing Tape of Parole Revocation Proceedings of Adrian Williams-El, dated 8/22/05, by the United States Parole Commission.

Petitioner was recommended re-instated expiditiously, i.e., forthwith which should have occured within "72" hours of said recommendation.

However, petitioner as of this date is still wrongfully, illegally and unconstitutionally denied my conditional liberty interest in violation of petitioners fifth amendment rights.

(5)

Petitioner has met his burden and satisfied by preponderance of the evidence that I'm illegally and unconstitutionally detained. See e.g., Silva v. Woodford, 279 F.3d 825, 835 (9th Cir.), Cert. denied, 537 U.S. 942 (2002)(petitioner's burden of proving " his custody is in violation of the Constitution, laws or treaties of the United States'... must be carried by a preponderance of the evidence").

Here, the delay's after petitioner was exonerated at his August 22nd, 2005, parole revocation hearing and Ordered re-instatement to be expidited and for which has still not come to fruition constitutes an on-going due process violation of the highest order. See (Section 14 of the Judiciary Act of 1789 authorized federal courts to issue the Writ of habeas corpus to prisoners 'in custody, under or by colour of the authority of the United States, or committed for trial before some court of the same.' Act of Sept. 24, 1789, ch. 20, §14, 1 Stat. 82.")        (5-A)

See Also Rasul V. Bush, 124 S. Ct. 2686, 2692 (2004)(
"In 1867, Congress extended the protections of the writ of
habeas corpus to 'All cases where "any person" may be restrained
of his or her liberty in violation of the constitution, or of
any treaty or law of the United States.' Act of Feb. 5, 1867,
ch. 28, 14 Stat. 385.")

See Also 2 M. Hale, Pleas of the Crown 77, 81, 95, 121 (1736);
2 W. Hawkins, Pleas of the Crown 116-117 (4th ed. 1762);
1 J. Stephen, History of the Criminal Law of England 233 (1883).

(5-B)

# Legal Analysis

## A. Jurisdictional Analysis

Before the Court can consider the merits of the Petitioner's claim, the Court must determine whether it has jurisdiction to entertain said petition. Ex parte McCardle, 74 U.S. (7 Wall.) 506, 19 L. Ed. 264 (1868).

The current action before this Honorable Court has been brought under 28. U.S.C. §§ 2241(a) and 2243. 28 U.S.C. § 2241(a) states that "(w)rits of habeas corpus may be granted by ... the district courts and any circuit judge within their respective jurisdiction." See Ash v. Reilly, 354 F. Supp. 2d 1 (D.D.C. 2004).

Should Respondent's attempt to sway the Court with arguments that this matter should have been undertaken before the Superior Court of the District of Columbia in accords to: Madley v.

(6)

_United States Parole Commission_, 278 F. 3d 1306 (D. C. Cir. 2002), is without legal authority here, as is: _Maddox V. Elzie_, 238 F. 3d 437 (D.C. Cir. 2001).

_See_ _Wilson V. Office of Chairperson of District of Columbia Bd. of Parole_, 892 F. Supp. 277 (D. D.C. 1995)(under D.C. Code Ann. § 16-1901, a habeas corpus petition directed to a federal official must be filed in the federal district court for the District of Columbia, whereas a habeas corpus petition directed to any other official is to be filed in the District of Columbia Superior Court; thus, prisoners convicted in the District of Columbia Superior Court must file their habeas corpus petitions in that Court, while prisoners convicted in the District of Columbia Superior Court but incarcerated in a federal prison must file their habeas petition in the federal district court for the District of Columbia; habeas corpus is the exclusive avenue available to a District of Columbia prisoner challenging the manner of execution of a sentence, rather than the sentence itself);

(7)

<u>Blair-Bey v. Quick</u>, 151 F. 3d 1036 (D.C. Cir. 1998)(D.C. Code §16-1901(A) authorizes a (District of Columbia habeas corpus remedy; §16-1901(B) requires petitions for writs of habeas corpus directed to federal officers and employees to be filed in federal district court, and §16-1901(C) provides that petitions for habeas corpus directed to any other person shall be filed in the Superior Court of the (District of Columbia; D.C. Code §16-1901 habeas corpus and 28 U.S.C. §2241 habeas corpus are distinct, equally available remedies by which D.C. petitioners may seek habeas corpus; §2241 remedy is available for D.C. prisoner who does not seek to challenge his conviction or sentence; §16-1901 does not bar §2241 proceeding by D.C. prisoner incarcerated in federal prison; §16-1901(B) and (C) only sets forth the proper place to file those habeas corpus petitions that are brought pursuant to §16-1901(A); they do not speak to the question of where persons may file habeas corpus petitions that are brought under other sources of authority, such as §2241; the most natural construction of §16-1901(B) and (C) is that they are venue provisions applicable only to habeas corpus petitions filed pursuant to §16-1901).

(7-A)

See Also   Ash v. Reilly, 354 F. Supp. 2d 1 (D.D.C. 2004).

B. Discussion's

It is seriously believe and exhibited here that the United States Parole Commission was little more than an extenduating prosecutor's tool... here, that the U.S. Attornies office utilized to prevent petitioner in locating his two eyewitnesses in formal D.C. Superior Court Criminal Case F-00041-05, by having the United States Parole Commission gain probable cause to issue and execite its parole violation warrant upon Knowing false Allegations and perjured testimony by the (same) formal arresting police officer in formal D.C. Superior Court Criminal Case F-00041-05, whom was caught lying under oath and finally admitted he lied on this petitioner. The Commission's paroling authority Ms. Sonja Atkinson sought the parole warrant upon "Knowing false

(7-B)

Allegations" Orchestrated by police to falsely accuse this petitioner of wrong doing.

The question everyone must ask, is whether it was constitutionally sound for the United States Parole Commission's employee's and agents to establish probable cause to issue a warrant for parole violation upon knowingly false allegations and perjured testimony by police in formal D.C. Superior Court Criminal Case F-00041-05, to undermind the Honorable D.C. Superior Court Judge Holeman's decision releasing petitioner on bond to in essence utilize its tool the United States Parole Commission to short-circuit the County decision and prevent petitioner from gaining access to his "two white eyewitnesses" whom were chased from the scene and threaten with being beaten and arrested which afforded police the perfect opportunity to set petitioner up?

(7-C)

Are not these events simular in context and nature
As to what the prosecutor did in: Maddox V. Elzie,
238 F. 3d 437 (D.C. Cir. 2001)?

We think that such abuses of judical Authority by prosecutors,
whom loose At trial, then out of clear retaliation utilize their
positions to utilize parole Commissions As their tools of
vindication is Constitutionally unsound, unethical and immorate
immoral. Two bites of the same Apple whether you loose
or not, clearly violates procedural safeguards' under the due
process clause of the fifth Amendment.

The utilization of Knowingly false Allegations And perjurious
testimony to gain A foothold in seeking and gaining A
parole Violation warrant upon such tainted grounds of
the formal Arresting police officer in formal @ D.C. Superior Court
Criminal

(7-D)

Case F-00041-05, dismissed with prejudice before the D.C. Superior Court on June 1, 2005, A.D.

Thus, the solicitation of knowingly perjured testimony orchestrated by the formal arresting police officer in formal D.C. Superior Court Criminal Case F-00041-05, by the United States Parole Commission to wrongly or wrongfully imprison this petitioner while undermining D.C. Superior Court Judge Holeman's decision in freeing petitioner on bond to keep petitioner from locating his "two" key ("white eyewitnesses") from the scene of the illegal and wrongful arrest and seizures of petitioner and his personal property and monitary property in violation of petitioners fourth and Fifth Amendment rights under the United States Constitution. See Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S. Ct. 182, 64 L. Ed. 319 (1920).

(8)

See Also Jones V. United States, 362 U.S. 257, 80 S.
Ct. 725, (4) L. Ed. 2d 697 (1960); Won Sun V. United
States, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963);
Simmons V. United States, 390 U.S. 377, 88 S. Ct. 967,
19 L. Ed. 2d 1247 (1968); Mancusi V. DeForte, 392
U.S. 364, 88 S. Ct. 2120, (20 L. Ed. 2d 1154 (1968);
Rakas V. Illinois, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed.
2d 387 (1978).

See Also United States V. Bell, 785 F. 2d 640, 642-43
(8th Cir. 1986); United States V. Pattman, 535 F. 2d 1062
(8th Cir. 1976); United States V. King, 613 F. 2d 670, 673
(7th Cir. 1980); Palmer V. Hoffman, 318 U.S. 109, 63 S. Ct. 477,
87 L. Ed. 645 (1943).
See (Downie V. Klincar, 759 F. Supp. 425 (N.D. Ill.
1991).

(9)

See Also Napue v. Illinois, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959), Mooney v. Holohan, 294 U.S. 103 (1935).

Thus, it was a legal and constitutional insult upon the integrity of federal Authority, i.e., the United States Parole Commission to establish probable cause upon "Knowing perjured testimony" to pursue and apprehend petitioner upon the "Knowing false statements" of the formal "arresting police officer" in formal D.C. Superior Court Criminal Case F-00041-05, where said United States Parole Commission and their Agents pursued, hunted petitioner by their constitutionally questionable warrant founded upon the "Knowing use of perjured testimony" by said formal Arresting police officer in formal D.C. Superior Court Criminal Case F-00041-05, then seeking to further promote that

(10)

"growing false testimony" by subpoenaing and soliciting the "knowingly perjurious arresting police officer" to further threaten or revoke petitioners "conditional liberty interest." The liberty associated with parole status, although not absolute, is extremely valuable... See Morrissey v. Brewer, 408 U.S. 471, 480, 482, 92 S.Ct. 2593, 2599, 2600, 33 L. Ed. 2d 484 (1972), and "any" deprivation of that liberty is quite serious. See Gagnon v. Scarpelli, 411 U.S. 778, 781, 93 S.Ct. 1756, 1759, 36 L. Ed. 2d 656 (1973).

Accordingly, parole cannot be revoked without affording the parolee due process, but because the parolee's liberty interest is conditional, and because the parole revocation process is independent of the criminal prosecution, the parolee is not entitled to the "full panoply" of due process

Rights Afforded A defendant in A criminal prosecution.

Morrissey, 408 U.S. At 480, 92 S.Ct. At 2599.

Although parole revocation hearings must be orderly, then, they may be attended by a certain flexibility and informality that would not be permissible in criminal trials. Id. At 483, 92 S.Ct. At 2601; See Also Hanahan V. Luther, 693 F. 2d 629, 633 (7th Cir. 1982), Cert. denied, 459 U.S.1170, 103 S.Ct. 815, 74 L. Ed. 2d 1013 (1983); United States ex rel. Carson V. Taylor, 540 F. 2d 1156, 1161 (2d Cir. 1976).

Here, the questions are: Is it flexible enough to warrant Solicitation of perjured testimony to threaten and revoke A parolee's parole? Does informality render the solicitation of Knowing perjurious testimony to justify sacrificing legal and constitutional integrity to deny

(12)

A parolee his "conditional liberty interest?"

If so, to what extent does this madness continue to devour our constitutional shields?

Where will it end, when will it stop?

Having emphasized this growing flexibility of the United States Parole Commission to be capable of such <u>detrimental conduct</u> as establishing <u>probable cause</u> upon the <u>foundations</u> of <u>falsehood</u> to <u>imprison</u> the parolee and <u>threaten</u> and <u>attempt to revoke</u> his <u>parole</u> upon "<u>knowingly perjurious testimony</u>" of a "<u>police officer</u>" whom <u>lies</u> "<u>under oath willfully</u>" not somehow overwhelm its flexibilities?

It's this not overwhelming prejudicial conduct?

We call upon this Honorable Court to try in answer these questions as best it can, for Respondents are simply

(13)

to full of themselves to do so.

Even now, after petitioner <u>won</u> a victory against the United States Parole Commission on August 22nd, 2005, A.D., and "<u>Ordered to be fully restored</u> and return" to his "<u>Conditional liberty expeditiously</u>," petitioner still remains <u>wrongfully imprison</u> by Respondents beyond the "72" hour mark of its own recommendation.

<u>We ask</u>, to what extent does this growing flexibility of the United States Parole Commission's <u>above the law</u> flexibility end? See <u>United States ex rel. Fitzpatrick v. United States Parole Commission</u>, 444 F. Supp. 1302.

See Also, <u>Long v. Gaines</u>, 167 F. Supp. 2d 75 (D.C. 2001) (7/17/01 Tr. at 69).

(14)

In <u>Long v. Gaines</u>, 167 F. Supp. 2d 75 (D.C. 2001), even the <u>United States Marshal Service</u> provided the Court an impartial report stating that the average time from arrest to revocation hearing is 99 days, and the average time from arrest to final decision is 156 days.

This honorable Court stated: It is clear, no matter what statistics the Court looks at on to, the Commission has failed and continues to fail to meet the requirements of its own unreasonable regulations.

This case before the Court is no exception to the Commission's failures to expidite those parolee's whom have <u>won</u> their hearings before the revocation examiner and Ordered that their releases be expidited. Once the Commission exceeds the "<u>72</u>" hour mark for expidited releases, due process is again violated. See U.S.C.A. Const. Amend. V.

(15)

Though said to petitioners knowledge was not discussed in Long V. Gaines, 167 F. Supp. 2d 75 (D.C. 2001), we believe it was discussed in: Morrissey V. Brewer, 408 U.S. 471, 480, 482, 92 S. Ct. 2593, 2599, 2600, 33 L. Ed. 2d 484 (1972), and a canopy of other federal and state cases for which we adopt here.

If we recognize the parolee status to be extremely valuable, Morrissey V. Brewer, 408 U.S. 471, 480, 482, 92 S. Ct. 2593, 2599, 2600, 33 L. Ed. 2d 484 (1972), and "any" deprivation of that liberty is quite serious... Gagnon V. Scarpelli, 411 U.S. 778, 781, 93 S. Ct. 1756, 1759, 36 L. Ed. 2d 656 (1973), than why would we delay prejudically the parolee's whom were their parole revocation hearings beyond "72" hour's? If the intent is to not cause irreparable harm and hardship upon the parolee's whom is employed and taking care of his family or

(16)

the soul source of income in sustaining his or her family in these dire times we are forced to face daily? Why would we prejudically delay their return to <u>society</u> and their <u>job</u>'s and <u>family</u> beyond "72" hours if they <u>win</u> their Parole Revocation hearings And are <u>Recommended</u> or <u>Ordered</u> <u>released expeditiously</u>? (Does <u>expidite</u> mean to <u>speed-up</u> or <u>slow-down</u>? <u>See United States ex rel. Fitzpatrick V. United States Parole Commission</u>, 444 F. Supp. 1302.

<u>See Also</u> 28 U.S.C. §2243 et <u>seq</u>.

<u>See</u> Habeas Corpus Act of 31 Charles II., C. 2; which spoke of persons committed or detained.

The requirement, in safeguarding the liberty of the citizen against deprivation through the action of the State, embodies the fundamental conceptions of justice

(17)

which lie at the base of our civil and political institutions. Herbert V. Louisiana, 272 U.S. 312, 316, 317 S., 47 S. Ct. 103, 48 A.L.R. 1102. It is a requirement that cannot be deemed to be satisfied by mere notice and hearing if the state has contrived a conviction through the pretence of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a state to procure the conviction and imprisonment of a defendant is an inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation. And the action of prosecuting officers on behalf of the state, like that of Adminis-[294 U.S. 103, 113] trative officers in the execution of its laws, may constitute state action within the purview of the Fourteenth Amendment. Here, we apply the Fifth Amendment.

(18)

See United States V. Bagley, 473 U.S. 667, 678-80, 105 S. Ct. 3375, 3381-82, 87 L. Ed. 2d 481 (1985)...,

"(D)eliberate deception of the Court by the presentation of false evidence is incompatible with rudimentary demands of justice" and a resulting conviction must be set aside "if there is any reasonable likelihood that the false testimony could have effected the jury verdict."

See Also Pyle V. Kansas, 317 U.S. 213, 63 S. Ct. 177, 87 L. Ed. 214 (1942)... "(t)he same result obtains when the State, although not soliciting false evidence, (a)llows it to go uncorrected when it appears." Id., at 269, 79 S.Ct. at 1177.

(19)

See Napue v. Illinois, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959) and Mooney v. Holohan, 294 U.S. 103 (1935).

Here, it is clear that the United States Parole Commission had a "personal stake" in petitioners formal D.C. Superior Court Criminal Case No. F-00041-05, where defying the D.C. Superior Court Judge Holeman's decision to release petitioner on Bond, the United States Parole Commission hurdled every constitutional sheild to have its illegal warrant executed to wrongfully imprison petitioner, upon knowingly perjured testimony and false statements. Thus, we analysis of the conduct orchestrated to imprison petitioner upon knowingly false statements and perjurious testimony aises to a presumption of vindichiveness here. Thus, petitioners Fifth Amendment

Rights were again violated here.

The writ of habeas corpus " is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose — the protection of individuals against erosion of their right to be free from wrongful ~~restraint~~ restraints upon their liberty as this case exposes." Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L. Ed. 2d 285 (1963).

Issuance of the Writ is simply a means of bringing the petitioner before the Federal forum for a hearing on the petitioners' claim for relief. See 28 U.S.C. §2243.

See Also Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L. Ed. 2d 554 (1968).

Here, petitioner is constitutionally and legally entitled to immediate release back to his conditional release or conditional freedom.

(21)

The "Fruit of the Poisonous Tree

See Silverthorne Lumber Co. V. United States, 251 U.S.
385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), where, in holding
that the government could not use information obtained
during an illegal search to subpoena the very documents
illegally viewed, the Court, per Holmes, J., pointed out:

"The essence of a provision forbidding
the acquisition of evidence in a certain
way is that not merely evidence so acquired
shall not be used before the Court but
that it shall not be used at all. Of course
this does not mean that the facts thus
obtained become sacred and inaccessible.
If knowledge of them is gained from an
independent source they may be proved
like any others, but the knowledge gained
by the Government's own wrong cannot be

(22)

"... used by it in the way proposed."

Did _Silverthorne_ mean that illegally seized evidence may never be used by the government although the facts revealed by that evidence may be obtained from an independent source? _See_ Robert M. Pitler, "The Fruit of the Poisonous Tree" Revisited and Shepardized, 56 Calif. L. Rev. 579, 589 (1968).

In _Nardone v. United States_, 308 U.S. 338, 60 S. Ct. 266, 84 L. Ed. 307 (1939), which first used the phrase "fruit of the poisonous tree," the Court, per Frankfurter, J., refused to permit the prosecution to avoid an inquiry into its use of information gained by illegal wiretapping, observing that "to forbid the direct use of methods [but] to put no curb on their full indirect use would only invite the very methods deemed 'inconsistent with ethical standards and destructive of personal liberty.'"

The relevant question. Does the _Wong Sun_ Court's talk of

(23)

"purging the primary taint" obfuscate the relevant question—
whether the admission of the secondary evidence will significantly
encourage police misconduct in the future as was exhibited here?
See Pitler, supra, at 588-89, Note, 115 U. Pa. L. Rev. 1136, 1147
(1967).

Verbal evidence as the "fruit" of illegal search
and seizure. In Wong Sun v. United States,
371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963),
six federal narcotics agents illegally broke into
Toy's laundry, chased him into the living quarters
at the back of his shop, where Toy's wife and
child were sleeping, and handcuffed him. Toy
then told the agents that Yee had been selling
narcotics. The agents immediately went to Yee,
who surrendered heroin to them and implicated
Toy and a third party, Wong Sun. A 5-4 majority,
per Brennan, J., held that both Toy's declarations,
upon being handcuffed in his bedroom, and "the

(24)

Narcotics taken from Yee, to which [Toy's] declarations led the police" had to be excluded As the "fruits" of the Agents' unlawful entry into Toy's bedroom And the "bedroom" Arrest."

The Court recognized that "traditionally" the exclusionary rule had barred only "physical, tangible materials," but concluded that "Verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest [as here] is no less the "fruit" of official illegality than the more common tangible fruits of the unwarranted intrusion."

Here, in formal (D.C. Superior Court Criminal Case F-00041-05, petitioner proved that he was "Wrongfully stopped" After an hour after the allege crime took place... petitioner never fitted the Radio run description of the Asalient...

(25)

i.e., the assailent was slated as being 6'4" or 6'5" inches in height, 185 pounds, extreemly dark completions, no facial hair ... in or around 20 to 25 years of age.

This petitioner is 5'10" tall, 235 pounds in weight, medium brown completions, formally Ball-headed, wairing a salt and pepper beard, 56 years of age. See Trezzell V. United States, 380 A. 2d 1382, 1385 (D.C. 1977), Cert. denied, 439 U.S. 931 (1978).

See Also Gibson V. United States, 566 A. 2d 473 (D.C. 1989); Jackson V. Wainwright, 390 F. 2d 288 (5th Cir. 1968).

Here, police chased off both of petitioners ("white eyewitnesses") whom attempted to inform police that they had the wrong man, but were chased off and threaten that they'd be beaten and arrested also if they didn't

(26)

Move away from the scene of petitioners illegal arrest, beating and set-up. See Strickler V. Greene, 527 U.S. 263, 282 (1999).

See Also In re A.S., 614 A. 2d 534, 538-39 (D.C. 1992); Bryant V. United States, 559 A. 2d 1107 (D.C. 1991); Brown V. United States, 590 A. 2d 1008 (D.C. 1991); Terry V. Ohio, 392 U.S. 1 (1968).

Here, police were so busy setting petitioner up, that they forgot to read him his rights. See Miranda V. Arizona, 384 U.S. 436 (1966).

See Also Miley V. United States, 477 A. 2d 720, 722 (D.C. 1984).

Here, petitioner while handcuffed behind his back,

(27)

Bleeding and surrounded by police was paraided
before some allege government witnesses in a one-man-line-up.
See Russell V. United States, 408 F. 2d 1280, 1284, Cert.
denied, 395 U.S. 928 (1969).

See Also e.g., Stovall V. Denno, 388 U.S. 293, 302
(1967). Indicia of custody heighten suggestiveness. Fields
V. United States, 484 A. 2d 570, 574 (D.C. 1984), Cert.
denied, 471 U.S. 1067 (1985).

Here, neither government eyewitness were sure this
petitioner was their man. See Manson V. Braithwaite,
432 U.S. 98, 114 (1968).

See Also Neil V. Biggers, 409 U.S. 188, 199-200 (1972)

Here, simply lied, i.e., the police simply lied and tainted the

(28)

whole judicial process. One formal arresting police officer
whom threaten and intimidated petitioners "two white eyewitnesses"
at the scene of petitioners illegal stop, arrest and seizure in
violation of petitioners fourth and fifth Amendment rights, where
the same arresting police officer lied to the Court, lied to the
Grand Jury of the (D.C. Superior Court in formal (D.C. Superior
Court Criminal Case F-00041-05, and was finally caught on the
witness stand, where he finally admitted under cross-examination
that he had infact lied on this petitioner. See Mooney V.
Holohan, 294 U.S. 103 (1935).

See Also Napue V. Illinois, 360 U.S. 264 (1959); Sherer V.
United States, 470 A. 2d 732 (D.C. 1983), Cert. denied, 469
U.S. 931 (1984); Murphy V. Bonanno, 663 A. 2d 505, 508-509
(1995); Lawrence V. United States, 482 A. 2d 374 (D.C. 1984).

(29)

G. Kitchen v. United States, 95 U.S. App. D.C. 277, 279,

221 F. 2d 832, 834 (1955), Cert. denied, 357 U.S. 928 (1958).

Here, police lied and they were forced to keep on lying until caught. See State of California v. O. J. Simpson, supra.

There, Detective Mark Furman made a name for himself upon lying on Black's, planting false evidence, making numberous false allegations until he too was caught.

Here, petitioners personal property and monitary funds were wrongfully seized in violation of petitioners fourth and fifth Amendment rights. See Evlia Simien, The Interrelationship of the Scope of the fourth Amendment and Standing to object to Unreasonable Searches, 41 Ark. L. Rev. 487, 539 (1988).

(30)

Here, petitioner has a "reasonable expectation" that his listed personal property and monitary funds will be returned to him forthwith.

This matter regarding petitioners "personal property" and "Monitary funds" illegally and unconstitutionally seized in formal D.C. Superior Court Criminal Case F-00041-05, is before this Honorable Court because respondents ("Open-the-door") by "soliciting" the "perjurious arresting police officer" in formal D.C. Superior Court Criminal Case F-00041-05, to appear by subpoena , to testify against petitioner at his "parole revocation hearing" on August 22nd, 2005, A.D., by respondent's. Once the attempt to "solicit knowing false testimony" from the "formal arresting police officer" in

(31)

formal (D.C. Superior Court Criminal Case F-00041-05,

the ("door-was-open") by Respondent's prejudical acts

to allow petitioner to seek his rightful personal and

monitary properties within the federal forum.

Thus, the United States Attorney for the District of Columbia

should be Ordered, to forthwith return "All" of petitioners

personal property And monitary property forthwith.

Any personal property And monitary property missing,

should be Ordered reinburst to petitioner forthwith.

At this point, Respondent's have exceeded the "72" hour

deadline for petitioners release back to conditional release

commencing 72 hours after August 22nd, 2005, A.D.,

parole revocation hearing that petitioner won his constitutional

(32)

And legal right to be reinstated forthwith. As the words of the U.S. Parole Commission's examiner, that petitioner be released expiditiously. yet, petitioner still remains illegally and Unconstitutionally confined. Wherefore, the Great Writ of Habeas Corpus should issue forthwith and petitioners should rightfully be awarded the writ and Ordered released forthwith back to his conditional release forthwith.

Petitioner should Also be awarded any additional relief the court deems appropriate and just.

Respectfully Submitted,

Adrian Williams-El

Adrian Williams-El, Pro Se- Petitioner
Federal No. 97648-131 / D.C.D.C # 162-518
C.C.A. (D.C.) C.T.F.
1901 "E" Street, S.E., E1B-20
Washington, (D.C. 20003

## Sworn Declaration

I, _Adrian Williams-El_ , Federal No. 97648-131/
D.C.D.C. # 162-518, Being Of Sound Mind Do Hereby Certify, Verify,
Swear Under Penalty of Perjury That The Information And Statements
Made Here By Me Are True And Correct To The Best Of My
Knowledge And As To That I Believe It To Be True.

This Being the 12th day of September 2005, A.D.

_Adrian Williams-El_
Adrian Williams-El, Swearee
(Federal No. 97648-131/D.C.D.C. # 162-518

## Certificate Of Service

I hereby certify, verify that a true and correct copy of
Petitioner's Traverse, was mailed postage Free paid by placing
said in C.C.A. (D.C.) C.T.F. Mail Box, Addressed to: Michael
Stovel, General Counsel, United States Parole Commission, 5550

(34)

Friendship Blvd., Chevy Chase, Maryland, 20815, this 12th day of September 2005, A.D., And Warden Fred E. Figueroa, Custodian, Warden C.C.A. (D.C.) C.T.F., 1901 "E" Street, S.E., Washington, D.C., 20003, this 12th day of September 2005, A.D., And United States Attorney For the District of Columbia, United States Department of Justice, 555 Fourth Street, N.W., Washington, D.C., 20001; this 12th day of September 2005, A.D.

Adrian Williams-El

Adrian Williams-El, Pro Se-Petitioner
Federal No. 97648-131/D.C.D.C.#162-518
C.C.A. (D.C.) C.T.F.
1901 "E" Street, S.E., E1B-20
Washington, D.C., 20003.

(35)

United States District Court
For The District of Columbia

Adrian Williams-El, Pro Se - Petitioner
Federal No. 97648-131 / D.C.D.C.# 162-518
C.C.A. (D.C.) C.T.F.
1901 "E" Street, S.E., E1B-20
Washington, D.C., 20003.

V.

Michael J. Gaines, Et Al. Chairman,
United States Parole Commission
5550 Friendship Blvd.
Chevy Chase, Maryland, 20815, Respondents;

And

Warden Fred E. Figueroa, Custodian
Warden C.C.A. (D.C.) C.T.F.
1901 "E" Street, S.E.
Washington, D.C., 20003, Respondent,

and

United States Attorney For The District of Columbia
United States Department of Justice

Civil Action No.
1:05-CV-1387

(1)

555 Fourth Street, N.W.

Washington, D.C., 20001; Respondent

---

## Order

It Being This ___ Day of _____ 2005, A.D.,

So Ordered: That The Writ Of Habeas Corpus Pursuant To

28 U.S.C. §2243 Is Ordered Granted. The United States

Marshal Service Is Ordered To Forthwith Bring forth

The Petitioner Adrian Williams-El, Federal No. 97648-131/

D.C.D.C. # 162-518, Before This Honorable Court With His

Legal Litigations. The Court Finding Overwhelming Merit

To Petitioners Claims And The Court Hereby Orders Petitioners

Release Back To Conditional Release forthwith. It Is

Further Ordered, That The United States Attorney Forthwith

Return All Of Petitioners Personal Property And Monitary

Property To Him From Formal D.C. Superior Court Criminal

(2)

Case F. 00041-05, Anything Missing The Government Is Ordered To Forthwith Reimburst Petitioner Its Monitary Value And On Issue Petitioner A New Drivers Permit And Non-Drivers Identification, Birth Certificate Identification And Social Security Card Identification forthwith.

The Honorable U.S. District Court Judge
Emmet G. Sullivan

(3)