# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ADRIAN WILLIAMS-EL,** | : | **Civil Action No. 05-1387 (EGS)** |
| **Petitioner** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL J. GAINES, CHAIRMAN** | : | |
| **U.S. PAROLE COMMISSION, et. al.,** | : | |
| **Respondents** | : | |

## U.S. PAROLE COMMISSION'S OPPOSITION TO PETITIONER'S PETITIONS FOR A WRIT OF HABEAS CORPUS

The U.S. Parole Commission, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully files its opposition to the petitioner's petitions for a writ of habeas corpus. The petitioner has filed at least five pro se petitions for writ of habeas corpus in which he claims that the U.S. Parole Commission ("Commission") lacks the authority to revoke his supervised release because his criminal case, which formed the basis for the Commission's warrant, has been dismissed, because the Commission has relied on the alleged perjurious testimony of a police officer, because his revocation hearings have been delayed, because he was not promptly released after the initial revocation hearing, because the Commission's policies and practices for issuing warrants are discriminatory and violate the Equal Protection Clause of the Constitution, and because the petitioner did not consent or agree to the terms of his supervised release. The petitioner's petitions should be summarily denied because the Commission is not bound by the dismissal of a criminal case, may consider evidence that may have been illegally seized, has not relied on the police officer's allegedly perjurious

-1-

testimony, may make its own determination as to the credibility of witnesses, and has not

violated the Equal Protection Clause of the Constitution, because the Court was bound by statute

to impose a term of supervised release, and because the petitioner has not demonstrated any

prejudice resulting from the delay in his revocation hearings.

## PROCEDURAL HISTORY

On February 28, 1975, the petitioner, Adrian Williams, also known as Adrian Williams-

El, was sentenced in Cr. 74-603 in U.S. District Court for the District of Columbia to three to

nine years of imprisonment for the offense of bank robbery and to one to three years of

imprisonment in Cr. 74-602 for the offense of interstate transportation of a stolen motor vehicle,

the sentences to run concurrently to each other.  See Exhibit A (Judgment and Commitment

Orders for Cr. 74-603 and Cr. 74-602).  On April 4, 1975, the petitioner was sentenced in Cr. 56-

75 in the U.S. District Court for the Eastern District of Virginia to ten years of imprisonment for

the offense of bank larceny.  See Exhibit B (Judgment and Commitment Order for Cr. 56-75).

On December 21, 1989, the petitioner was convicted in F2665-83 in the Superior Court of the

District of Columbia and sentenced to 100 days of imprisonment and 3 years probation for the

offenses of two counts of unlawful entry and one count of attempted robbery. See Exhibit C

(Judgment and Commitment Order for F2665-83).  On September 16, 1992, the petitioner was

convicted in F2118-91 in the Superior Court of the District of Columbia and sentenced to twenty

to sixty months of imprisonment for the offense of unauthorized use of a vehicle and to twelve

months of imprisonment for the offense of destruction of property, to run consecutively to each

other.  See Exhibit D (Judgment and Commitment Order for F2119-91).  On March 23, 1993, the

petitioner's probation was revoked in F2665-83 and he was sentenced  to one to three years of

imprisonment. See Exhibit E (Judgment and Commitment Order in F2665-83).

The petitioner has been granted parole three times in his sentences, had his parole revoked three times, and, on February 6, 2001, the petitioner was mandatorily released from the aggregate sentences with a full term sentence expiration date of August 25, 2001.  See Exhibit F (Bureau of Prison Sentence Monitoring Computation Data p. at 7).

On May 9, 2001, the petitioner was arrested for burglary by the Metropolitan Police Department.  See Exhibit G (Sworn Statement by MPD Officer). According to the sworn statement of MPD Officer William Belton dated May 10, 2001, the petitioner had tried to enter an occupied apartment at 4201 Massachusetts Avenue, NW, while carrying a black bag. The occupants subsequently identified the petitioner, as he was sitting at a bus stop near the apartment building. Id. While police were conducting a preliminary investigation, other witnesses came forward and identified the petitioner as the person who had also entered their apartment on May 5, 2001. These other witnesses stated that, at approximately 3:20 a.m., the petitioner had startled them, when he opened the door to their apartment. The occupants noticed that the petitioner was wearing gloves and had a black bag at his feet. When one of the occupants asked him what he was doing, the petitioner asked the occupant for some toilet paper and then left when the occupant complied with the request. Id.

The U.S. Parole Commission issued a parole violator warrant for the petitioner on August 2, 2001. See Exhibit H (Warrant). The Commission charged the petitioner with violating the law by committing the offenses of burglary and attempted burglary based on the May 5, 2001 and May 9, 2001 incidents.  See Exhibit I (Warrant Application).

On September 26, 2001, the petitioner was sentenced to 30 months imprisonment,

followed by three years of supervised release for the offense of attempted second degree burglary in F2839-01.  See Exhibit J (Judgment and Commitment Order for F2839-01). The Commission's warrant was lodged as a detainer until the petitioner completed the intervening sentence.

On July 19, 2003, the petitioner completed the sentence imposed in F2839-01 and was released to the detainer that had been lodged by the Commission. Upon receipt of a recalculation of the balance of the petitioner's parolable sentence from the Bureau of Prisons, the Commission decided to release the petitioner from its warrant and close the case because of the limited amount of time remaining on his sentence.  See Exhibit K (Notice of Action). The petitioner was instructed to report to the D.C. Court Services and Offender Supervision Agency immediately upon release to commence supervision on the three-year supervised release term imposed in F2839-01.  Id; see also Exhibit X (Certificate of Supervised Release for F2839-01).  This is petitioner's only remaining sentence.[1]

On January 4, 2005, Supervision Officer Sonya Atkinson advised the U.S. Parole Commission that the petitioner had been re-arrested by the Metropolitan Police Department on December 31, 2004 and charged with first degree burglary while armed.  See Exhibit L (Report of Alleged Violation(s)). The petitioner was accused of burglarizing an apartment at 4301 Massachusetts Avenue N.W. and taking a laptop computer, while the occupants were home.  Id. at pp. 3-5.  Another resident of the building contacted the receptionist desk to report a second burglary. In the second incident, the resident had noticed that her door was open and that there

---

[1]Although the petitioner refers to himself as a parolee, his only remaining obligation is the three-year term of supervised release imposed in F2839-01.

was a backpack leaning against the wall. She closed the door, but shortly afterwards, a black

male knocked at her door and asked her if she wanted her paper.  The receptionist confronted a

man leaving the building who met the description given by the second resident and then

contacted police to notify them that the suspect had exited the building.  Police arrested the

petitioner at 4201 Massachusetts Avenue, conducted a search of the backpack that the petitioner

was carrying, and found the laptop that had been stolen from the first apartment. Id.

On February 17, 2005, the U.S. Parole Commission issued a violator warrant for the

petitioner. See Exhibit M (Warrant). The Commission charged the petitioner with violating the

law by committing the offense of first degree burglary while armed on December 31, 2004. See

Exhibit N (Warrant Application). The Commission's warrant was executed on March 3, 2005.

See Exhibit O (Warrant Executed).

On March 8, 2005, a probable cause hearing was conducted concerning the petitioner's

arrest for first degree burglary while armed and a U.S. Parole Commission hearing examiner

found sufficient probable cause to believe that the petitioner had violated the conditions of

supervised release.  See Exhibit P (D.C. Probable Cause Hearing Digest). The hearing examiner

advised the petitioner that the revocation hearing would be conducted on May 5, 2005. Id. at p. 5.

Three adverse witnesses were requested by the petitioner: his supervision officer, the police

officer who made the arrest in the burglary charge, and the victim of the burglary.  Id. at p. 3.

On April 29, 2005, the petitioner's attorney requested a continuance of the revocation

hearing to a date in June 2005.  See Exhibit Q (Email Notifications).  The U.S. Parole

Commission granted the request. Id.  The case in which the petitioner was charged with first

degree burglary on December 31, 2004 in F41-05 was dismissed on June 1, 2005.  See Exhibit Y

(Replicated Criminal Information System II).

The petitioner's revocation hearing was re-scheduled and subsequently was conducted on August 22, 2005. See Exhibit R-1 (Hearing Summary). The petitioner did not object to the delay in his revocation hearing which was the result of his counsel's request for a continuance. Of the three witnesses that had been subpoenaed to appear at the hearing, only the supervision officer appeared. Id. at p. 1. The petitioner denied the charge, claiming that it was a case of mistaken identity and that he just happened to be in the vicinity of the burglary. Id. at p. 2. The hearing examiner was advised by the petitioner's counsel that the criminal case (F41-05) had been dismissed with prejudice by the D.C. Superior Court, but the examiner was not informed of the basis for that decision. Id. The hearing examiner, who was not aware that the hearing had been delayed at the request of the petitioner's attorney, recommended no finding on the criminal charge and recommended that the petitioner be released from the custody of the warrant and reinstated to supervision based on the time that the petitioner had been in custody, the fact that the criminal charge had been dismissed, and the lack of information about the reliability of the witnesses who had been subpoenaed but failed to appear. Id. at pp. 2-3.

The executive hearing examiner disagreed with the hearing examiner's recommendation because he found that the delay of the hearing should not be attributed to the Commission, the criminal charge had been dismissed because of an illegal search by the police and not based on the insufficiency of the evidence or lack of cooperation of the witnesses, and because it was not apparent that the witnesses would fail to appear at a subsequent hearing. See Exhibit R-1 at p. 3; Exhibit S (Memo Concerning Telephone Call). Additionally, the executive hearing examiner considered releasing the petitioner and issuing a summons for him to appear at the continued

revocation hearing, but, based upon the petitioner's six prior convictions for burglary, unlawful entry, and robbery offenses, the executive hearing examiner concluded that the petitioner should remain in the custody of the Commission's warrant.  See Exhibit R-1 at p. 4. The Regional Commissioner concurred with the executive hearing examiner's recommendation and remanded the case for a rehearing. See Exhibit R-2 (Order).

On October 11, 2005, the Commission issued its decision to continue the revocation hearing to further consider the burglary charge and re-subpoena the adverse witnesses requested by the petitioner.  See Exhibit T (Notice of Action). The hearing is scheduled for November 9, 2005.  See Exhibit U (Email Notification).

On October 18, 2005, after considering the petitioner's medical condition, a request from his attorney to release him from the custody of the Commission's warrant, and information from the petitioner's supervision officer, the Commission decided to hold the petitioner in custody pending the November 9, 2005 hearing. See Exhibits V (Memo re Telephone Call) and W (Notice of Action).

## ARGUMENT

The petitioner has alleged that the Commission can not revoke his supervised release because his criminal case has been dismissed, because the Commission has relied on the alleged perjurious testimony of a police officer, because his revocation proceedings have been delayed, because the Commission has violated the Equal Protection Clause of the Constitution, and because the petitioner did not agree to the terms of his supervised release.[2] These arguments are

_____

[2]The Court has subject-matter and personal jurisdiction because the petitioner was confined at the District of Columbia Correctional Treatment Facility at the time he filed his petition. The only proper respondent is Warden Fred Figueroa of the Correctional Treatment

without merit, and, for the following reasons, the petitioner's petitions should be summarily denied.

## I.    THE COMMISSION IS NOT BOUND BY THE DISMISSAL OF THE CRIMINAL CASE.

The petitioner claims that the dismissal of the burglary charge in F41-05 exonerates him and, as a result, there is no basis for the Commission to continue to hold him in custody on its warrant. There is no merit to the petitioner's claim because the Commission is not bound by the dismissal of the criminal case.

## A.    The Parole Commission May Consider The Underlying Facts Of The Dismissed Criminal Charges.

The U.S. Parole Commission's regulations permit the Commission to consider federal, state, or local convictions to determine whether there has been new criminal conduct committed by a parolee, or the Commission may make an independent finding at a revocation hearing.  <u>See</u> 28 C.F. R. § 2.21(a)(2).[3]  Because of the differences in the burdens of proof required for a criminal trial and a revocation proceeding, acquittal in a criminal proceeding is not a bar to consideration of alleged crimes at a revocation proceeding, in which the preponderance of the evidence standard is used. <u>See</u> <u>Dowling v. United States</u>, 493 U.S. 342, 349 (1990)(acquittal does not preclude the possibility that the preponderance of the evidence could show that the offender was involved in the alleged criminal conduct); <u>Maddox v. Elzie</u>, 238 F.3d 437, 447 (D.C. Cir.)

---

Facility.  <u>See</u> 28 U.S.C. § 2243; <u>Blair-Bey v. Quick</u>, 151 F.3d 1036, 1039 (D.C. Cir. 1998) ("When a prisoner seeks to challenge parole-related decisions, the warden of the prison and not the U.S. Parole Commission is the prisoner's 'custodian.'").

[3]28 C.F.R. § 2.21 has been incorporated into the regulations pertaining to supervised release violators by 28 C.F.R. § 2.218.

-8-

(upholding revocation of parole by D.C. Board of Parole, following parolee's acquittal on criminal charges, based on evidence presented by U.S. Attorney's Office), cert. denied, 534 U.S. 836 (2001); Johnson v. U.S., 763 A.2d 707, 711 (D.C. 2000) (upholding revocation of probation after acquittal of underlying offense); Billiteri v. United States Board of Parole, 541 F.2d 938, 944 (2nd Cir. 1976) (function of Parole Commission found to be analogous to that of sentencing judge who is permitted to consider charges for which the defendant was acquitted).

If the Commission may consider acquitted charges in its determination, a fortiori a charge that has been dismissed before going to trial may be considered by the Commission to determine whether the supervised releasee has committed new criminal conduct while on supervised release. See Barnes v. D.C. Board of Parole, 759 A.2d 1073, 1075 (D.C. 2000) (even though criminal charge was dismissed, it was permissible for the Parole Board to consider the evidence underlying the charge); Maddox v. U.S. Parole Commission, 821 F.2d 997, 999 (5th Cir. 1987) (Commission may consider uncharged criminal conduct); Mullen v. United States Parole Commission, 756 F.2d 74, 75 (8th Cir. 1985) (the prosecutor's conclusion that the evidence was insufficient to prove a criminal charge had no bearing on Commission's consideration of the charge as a parole violation); Rose v. Bledsoe, 2005 WL 2372156, *4 (W.D. Va. September 23, 2005) (Commission entitled "to make its own independent findings of criminal conduct;" Commission may consider conduct underlying dismissed charges); Hurt v. Holencik, 2005 WL 1653175, *6 (M.D. Pa. July 6, 2005) ("Commission can rely on evidence supporting a criminal charge even if that charge has been dismissed"); U.S. ex rel. Carrasquillo v. Thomas, 527 F.Supp. 1105, 1109-10 (S.D.N.Y. 1981) (dismissal of criminal charges does not bar a federal

parole revocation on the same evidence), <u>aff'd</u>, 677 F.2d 225 (2nd Cir. 1982).[4]

**B.     The Exclusionary Rule Does Not Bar The Commission From Considering Evidence Seized In Violation Of The Fourth Amendment.**

The decision to dismiss the burglary charge in F 41-05 was based on the conclusion that the police conducted an illegal search, not because of a lack of evidence or cooperation of the witnesses or because the petitioner had been exonerated. <u>See</u> Exhibit S. The Commission is not precluded from considering the purported illegally seized evidence associated with the petitioner's arrest for burglary because the procedural protections available to a criminal defendant at a trial, such as the exclusionary rule, are not available to a parolee at a revocation hearing. <u>See Pennsylvania Board of Probation and Parole v. Scott</u>, 524 U.S. 357, 364 (1998) (holding that exclusionary rule does not bar introduction of evidence seized in violation of the Fourth Amendment in parole hearings); <u>Maddox v. Elzie</u>, <u>supra</u>, 238 F.3d at 445 (parole revocation "is not the continuation of a criminal trial, but a separate administrative proceeding at which the parolee does not possess the same rights as a criminal defendant at trial"). In <u>Pennsylvania Board of Probation and Parole v. Scott</u>, the Court held that the exclusionary rule, a judicially created means of deterring illegal searches and seizures, should only be applied in situations where it can most effectively achieve its remedial objectives. 524 U.S. at 362-63. The Court concluded that the exclusionary rule should not be applied to parole revocation hearings because it would impede the

---

[4]For most purposes, supervised release is the functional equivalent of parole and therefore cases interpreting parole are fully applicable to cases involving supervised release. <u>See, e.g.</u>, <u>United States v. Frazier</u>, 26 F.3d 110, 113-14 (11th Cir. 1994) (no significant conceptual difference between revocation of probation or parole and revocation of supervised release concerning the applicability of rules of evidence); <u>United States v. Blackshear</u>, 1993 WL 288297, *5 (6th Cir. July 29, 1993) (no underlying difference between probation revocation hearing and supervised release revocation hearings for purposes of applying the exclusionary rule), <u>cert. denied</u>, 510 U.S. 1076 (1994).

normally flexible administrative character of parole revocation proceedings. 524 U.S. at 365.

In this case, the petitioner is accused of violating the conditions of supervised release by committing a serious criminal offense, i.e., burglary of a residence. If the charge is true, the petitioner entered an apartment while the resident was home, which is just the type of information that the Commission must fully consider in order to make a well-informed decision concerning the danger that the petitioner poses to the public and the petitioner's fitness to remain on supervised release. See Davis v. Brown, 311 F.Supp.2d 110, 114 (D.D.C. 2004) (holding that if new significant information, such as an investigation for murder, had not triggered a second look at whether parole is authorized, it would have been a "gross dereliction" of the Commission's duties); Short v. U.S., 366 A.2d 781, 786 (D.C. 1976) (granting and revocation of probation must serve the ends of justice and be in the best interest of the public and the probationer). Thus, the fact that the criminal charge may have been dismissed due to Fourth Amendment concerns is irrelevant to the Commission's decision, because the exclusionary rule does not apply at revocation hearings.

**C.    The Issue of the Commission's Potential Consideration of the Testimony of the Police Officer Is Not Ripe For Judicial Review**

The petitioner alleges that the U.S. Parole Commission is knowingly "promoting" or "soliciting" false information by relying on information from a police officer whom he claims lied to the grand jury and "on the stand." Given that the Commission has not yet heard the officer's testimony, let alone rendered a decision in this case, this issue is not yet ripe for judicial review. See Smith v. U.S. Parole Comm'n., 1992 WL 393193, *1 (6th Cir. December 21, 1992) (petitioner's complaint that his sentences were not running concurrently was premature given that

-11-

his revocation hearing had not yet been held); <u>Hopper v. U.S. Parole Commission</u>, 702 F.2d 842,

845 (9th Cir. 1983) (until a revocation hearing is held, a controversy over credit for pre-trial

confinement is not ripe).

      The Commission has not yet heard from the police officer. The police officer will be

required to testify under oath at the upcoming revocation hearing where he will be subject to

confrontation and cross-examination. The Commission will hear the police officer's and the

petitioner's version of the event. If there is a dispute about the accuracy of the information

presented, the Commission will resolve the conflict by determining which version best accords

with reason and probability.  <u>See</u> 28 C.F.R. § 2.19(c). The Commission will assess the credibility

of both the police officer and the petitioner, a judgment left to the sole discretion of the

Commission. <u>See</u>, <u>e.g.</u>,  <u>Hackett v. U.S. Parole Comm'n</u>, 851 F.2d 127, 131 (6th Cir. 1987)

(holding that court had no power to overturn the credibility determination made by the

Commission); <u>Mack v. McCune</u>, 551 F.2d 251, 253 (10th Cir. 1977) (prisoner's credibility was an

appropriate element for consideration by the Commission); <u>cf</u>. <u>Amaya v. Beto</u>, 424 F.2d 363, 364

(5th Cir. 1970) (in the context of a probation revocation hearing, the credibility of probationer's

testimony was a proper element for the judge to consider).  Finally, once the Commission has

issued its decision, the petitioner will have the opportunity to appeal the Commission's decision.

<u>See</u> 28 C.F.R. § 2.26.

      Contrary to the petitioner's claim, the Commission does not promote or condone false

information, but must consider all available versions of the alleged offense conduct and make a

determination as to whether the petitioner was involved as charged.  <u>See</u> 28 C.F.R. § 2.19.

At the continued hearing, the petitioner, who will be represented by counsel, will have the

opportunity to cross examine the police officer (and victim) and "demonstrate why [the evidence] is unreliable." See Allston v. Gaines, 158 F.Supp. 2d 76, 80 (D.D.C. 2001). However, because the officer has not yet testified in this matter, the petitioner's challenge to his possible testimony is not ripe for judicial review.

## II.    THE COMMISSION'S DELAY IN CONDUCTING PETITIONER'S HEARING HAS NOT VIOLATED HIS DUE PROCESS RIGHTS.

The petitioner complains that the Commission violated his due process rights because it delayed conducting his revocation hearing. Although the Commission has not completed the petitioner's revocation hearing, the hearing has been scheduled for November 9, 2005, and therefore, this argument will shortly become moot.  In any event, the petitioner has not and cannot demonstrate any prejudice as a result of the delay in his revocation hearing. The Commission acknowledges that the hearing was delayed beyond the 65 days required by 28 C.F.R. § 2.102(f); however, the hearing was initially delayed at the request of the petitioner's attorney. See Exhibit Q; Castillo v.  United States, 391 F.2d 710, 711 (2nd Cir.  1968) (parolee who causes delay cannot complain of delay).

Moreover, the law is well established that the remedy for a delayed parole revocation hearing is for the Parole Commission to conduct a hearing. See Sutherland v. McCall, 709 F.2d 730, 732 (D.C. Cir. 1983) (remedy for a delayed hearing is to compel the hearing, not to order release); Bryant v. Grinner, 563 F.2d 871, 872 (7th Cir. 1977) (same); Lantion v. U.S. Parole Comm'n., 2005 WL 758270, *1 (D.D.C. April 1, 2005) (the available remedy for an untimely hearing "is a writ of mandamus directing the Parole Commission to conduct a hearing"); Sacasas v. Rison, 755 F.2d 1533, 1535-36 (11th Cir. 1985). Although the revocation hearing conducted on

-13-

August 22, 2005 has not resulted in a final decision and the Commission has ordered a continued

hearing, when the continued hearing is conducted on November 9, 2005, the issue will be moot.

Even if the issue is not moot, the petitioner is not entitled to release on a writ of habeas

corpus unless he can establish "actual prejudice" arising from an unreasonable delay, i.e., that the

delay "prejudiced his defense at the revocation hearing." See Sutherland v. McCall, supra, 709

F.2d at 733 (petitioner failed to show that the thirty-three month delay prejudiced his defense at

the revocation hearing); Farmer v. U.S. Parole Comm'n., 2005 WL 354007, *1 (D.D.C. Feb. 14,

2005) (petitioner must demonstrate that delay was unreasonable and prejudicial); Crum v. U.S.

Parole Comm'n., 814 F.Supp. 1, 3 (D.D.C. 1993) (delay of hearing, owing in part to the

Commission's delay and in part to counsel's request for a continuance of the revocation hearing,

did not violate offender's rights because he was not prejudiced by the delay). Delay, standing

alone, does not entitle the petitioner to release from prison. Rather, the prejudice that the

petitioner must demonstrate refers to prejudice suffered by an alleged parole violator in preparing

or presenting his defense to the revocation charges due to the loss of witnesses or evidence as a

result of the delay. See Paul v. McFadin, 1997 WL 407843, *2 (10th Cir. 1997) ( parolee must

show actual prejudice caused by unreasonable delay); Villarreal v. U.S. Parole Comm'n., 985

F.2d 835, 837 (5th Cir. 1993) (parolee must show actual prejudice was caused by unreasonable

delay); Northington v. U.S. Parole Commission, 587 F.2d 2, 3 (6th Cir. 1978) (parolee must

demonstrate prejudice that is severe enough to render the revocation inadequate in terms of relief);

Gaddy v. Michael, 519 F.2d 669, 673 (4th Cir. 1975) ("mere lapse of time or delay, . . . without

more, will no more violate the due process right of a parolee than will a delay of trial in the

ordinary criminal case offend the 'speedy trial' provision of the Constitution"), cert. denied, 429

U.S. 998 (1976).

The petitioner claims that the Commission has prevented him from finding two witnesses who can testify that he did not commit the offense, although he does not have their names because they were allegedly "chased off" by police. The petitioner is responsible for presenting witnesses who may provide information in his defense of the criminal charge. His mere allegation that some unidentified persons can exonerate him is not a sufficient showing of actual prejudice caused by the delay in conducting his revocation hearing.  See Agresti v. Parker, 285 F.Supp. 893, 897 (M.D. Pa. 1968) (rejecting claim of prejudice by delayed hearing because favorable witnesses were no longer available where parolee failed to show that he attempted to contact the witnesses or secure written statements). The petitioner has the assistance of the Public Defender Service to locate witnesses and other evidence to defend him at his revocation hearing. Because the petitioner has not demonstrated prejudice, his claim based on delay must be summarily denied.

**III.    PETITIONER WAS NOT ENTITLED TO BE RELEASED WITHIN 72 HOURS OF HIS REVOCATION HEARING.**

The petitioner claims in his "traverse" that he should have been released after his revocation hearing because the hearing examiner concluded that he did not violate the conditions of supervision and that he should be reinstated to supervision. The petitioner's claim is based on the recommendation of the Commission's hearing examiner who conducted the hearing, not the final decision of the Commission. Commission regulations provide that the summary and recommendation of the hearing examiner who conducted the hearing is given to another examiner for review.  See  28 C.F.R. § 2.216(h). When two hearing examiners concur in a recommendation, that recommendation is submitted to the Commission, along with the releasee's file and the

-15-

summary of the hearing, for decision by the Commission.  However, a Regional Commissioner

may disagree with the panel recommendation and remand the case for a rehearing, with the notice

of action specifying the purpose of the rehearing. 28 C.F.R. § 2.24(b)(2).

There is no requirement that, upon the recommended finding of one hearing examiner that

there has not been a violation of the conditions of supervised release, the offender must be

released within 72 hours.  To the contrary, there must be the concurrence of two hearing

examiners which may then reviewed by the Regional Commissioner. The Regional Commissioner

may concur in the panel's recommendation, refer the case to another commissioner, or remand the

case for a rehearing. 28 C.F.R. § 2.24(b)(2).  In the petitioner's case, it was the decision of the

Regional Commissioner that the petitioner would be held in custody pending a further revocation

hearing and the petitioner was notified of this decision on October 11, 2005.  See Exhibits R-2

and T. Thus, because the Commission determined that the petitioner be held pending his

continued revocation hearing, and because the petitioner has not otherwise shown he was entitled

to release, this Court should summarily reject the petitioner's claim that he was entitled to release

within 72 hours of the initial revocation hearing.

IV.    **THE COMMISSION'S DECISION TO ISSUE A WARRANT DID NOT
       DISCRIMINATE BY RACE AND DID NOT VIOLATE THE EQUAL
       PROTECTION CLAUSE OF THE CONSTITUTION.**

The petitioner claims that the Commission's practice of issuing violator warrants is

discriminatory and violates the Equal Protection Clause of the Constitution. In this regard, it

should be noted that the Equal Protection Clause guarantees that similarly situated persons receive

similar treatment under the law. See City of Cleburne v. Cleburne Living Center, Inc., 473 U.S.

432, 439 (1985) (statutory classifications based on race or ethnic origin are seldom relevant to the

achievement of any legitimate state interest, therefore they are subject to strict scrutiny). Where the government has classified persons for different treatment based on race or ethnic background, the government must have a compelling reason to justify the classification; otherwise, the official action is presumed to be valid if the classification drawn is rationally related to a legitimate governmental objective.  Id. at 440.

It also should be noted that the Parole Commission possesses broad discretion concerning the issuance and disposition of its warrants. The Commission may issue a warrant or delay issuance of a warrant pending disposition of a criminal charge. See 18 U.S.C. § 4213(b). Indeed, the Commission has issued a regulation concerning this issue, see 28 C.F.R. § 2.211(c), which states the following:

> Any summons or warrant under this section shall be issued as soon as practicable after the alleged violation is reported to the Commission, except when delay is deemed necessary. Issuance of a summons or warrant may be withheld until the frequency or seriousness of the violations, in the opinion of a Commissioner, requires such issuance. In the case of any releasee who is charged with a criminal offense and who is awaiting disposition of such charge, issuance of a summons or warrant may be (1) temporarily withheld, (2) issued by the Commission and held in abeyance, (3) issued by the Commission and a detainer lodged with the custodial authority; or (4) issued for the retaking of the releasee.  (emphasis added).

In this case, the petitioner's allegations that the Commission issues warrants more readily for black parolees in the District of Columbia are conclusory and unsupported by evidence. The petitioner has failed to show that race was used by the Commission to classify persons on supervision for the purpose of issuing warrants and has failed to show that race was used as a basis for issuing a warrant in his case. See U.S. v. Armstrong, 517 U.S. 456, 464 (1996) (to overcome the strong presumption that prosecutor has not violated equal protection in deciding which cases to prosecute, the criminal defendant must provide "clear evidence to the contrary").

-17-

The petitioner has not alleged that the Commission's regulations establish race as a criterion for issuing violator warrants. Moreover, he has failed to allege specific facts that show the Commission engages in a practice of using race as a criterion for issuing violator warrants. To the contrary, it is the "frequency and seriousness of the violations" that the Commission considers when deciding whether to issue a warrant. See 28 C.F.R. § 2.211(c).

Because the Commission's regulation does not implicate a suspect class, the inquiry turns to whether the Commission's action is "patently arbitrary and bears no rational relationship to a legitimate government interest." See Young v. United States Parole Commission, 682 F.2d 1105, 1109 (5th Cir.) (holding that due process and equal protection did not prohibit regulatory classifications at issue), cert. denied, 459 U.S. 1021 (1982). In the petitioner's case, the Commission had a legitimate reason for issuing a warrant. The petitioner had a prior conviction for committing burglary, he was on supervised release for committing burglary, and, while on supervised release, he was arrested and charged with committing burglary.

The petitioner has not met his burden of showing, as he claims, that he has been treated unfairly compared to other similarly situated supervised releasees, i.e., that the Commission withheld issuance of a warrant in the case of a white releasee who had previous convictions for burglary and who had been arrested for committing burglary while on supervised release. In fact, the petitioner has not shown that he is similarly situated to anyone who has received favorable treatment. See King v. U.S. Parole Commission, 2002 WL 31520756, * 1 (D.C. Cir. 2002) (holding that offender had not shown that he was a member of a suspect class and finding that the Commission had a legitimate reason for its decision); Garner v. Pugh, 2000WL 554535, *1 (10th Cir. 2000) (D.C. parolee's equal protection claims were vague and conclusory and did not

establish that any other offender was similarly situated and received different treatment);  Brandon

v.  D.C. Board of Parole, 823 F.2d 644, 650 (D.C. Cir. 1987) (holding that a frustrated applicant

for parole failed to make the "necessary predicate showings" to establish an equal protection

claim).  Accordingly, the petitioner has not established that Commission's practice of issuing

violator warrants is discriminatory and violates the Equal Protection Clause of the Constitution

and therefore has failed to state a valid equal protection claim.

## V.     THERE IS NO MERIT TO PETITIONER'S CLAIM THAT HE IS NOT BOUND BY THE CONDITIONS OF SUPERVISED RELEASE.

The petitioner claims that he never signed a written agreement to be on supervised release

or obey the "rules, regulations, policies, or guidelines" of supervised release, and that the

Commission therefore has no authority to detain him for violating the conditions of his supervised

release. The petitioner's argument, although a novel one, must fail.

The defendant was sentenced to thirty months of imprisonment, followed by three years of

supervised release in F 2839-01.  See Exhibit J.  The term of supervised release was imposed

pursuant to D.C. Code § 24-403.01(b)(2), which requires the imposition of a term of supervised

release; no agreement by the defendant was necessary.[5]  See Fyre v. United States, 2005 WL

2665432, *11-13 (D.C.  Oct. 14, 2005) (given the term of imprisonment, the statute mandated a

period of five years supervised release); Murray v. United States, 855 A.2d 1126, 1136 n. 10

(D.C. 2004) (defendant had no right to be present when court issued an amended judgment and

commitment order adding "the statutorily required terms of supervised release").

---

[5]A contract is a promise or set of promises constituting an agreement between parties that gives each a legal duty to the other and the right to seek a remedy for the breach of those duties. See Blacks Law Dictionary, 322 (6th ed. 1990).

D.C. Code § 24-403.01(b)(6) places offenders on supervised release under the authority of the Parole Commission and vests in the Commission the same authority vested in the U.S. District Courts by 18 U.S.C. § 3583(d)-(i). Under 18 U.S.C. § 3583(f), the probation officer provides the defendant with a written statement that sets forth the conditions of supervised release. According to Commission regulations at 28 C.F.R. § 2.203, when the offender who has been released to serve the term of supervised release imposed by the court reports to his supervision officer for the first time, the supervision officer presents the offender with the certificate which contains the conditions of supervised release. There is no requirement that the releasee execute a written instrument agreeing to abide by the conditions of supervised release. The defendant was advised of the term of supervised release at the time of sentencing and subsequently was advised by the Commission of the terms and conditions of supervision at the time of release. See Exhibits J and X.

Therefore, the absence of a signed "agreement" is not determinative of the Commission's authority to issue a warrant to return the petitioner to custody or to revoke supervised release. See U.S. v. Johnson, 763 F.Supp. 900, 902-03 (W.D. Tex. 1991) (holding that U.S.offender need only have been orally advised by the court at sentencing of the term of supervised release); Hicks v. Reid, 194 F.2d 327, 329 (D.C. Cir.) (in the context of a mandatory release, prisoner cannot avoid conditions of release, which are imposed by statute), cert. denied, 344 U.S. 840 (1952); Robinson v. Willingham, 369 F.2d 688, 689 (10th Cir. 1966) (holding that releasee's refusal to sign mandatory release certificate had no affect on whether he was required to abide by the conditions of release because the conditions were fixed by Congress); Barnett v. Dretke, 2005 WL 1155698, * 4 (S.D. Tex.  May 13, 2005) (rejecting claim that there was no valid agreement between releasee

and state to abide by conditions of release because he did not sign statement of the conditions of

release). Thus, the petitioner's agreement to the term of supervised release is not required to

provide the Commission with the authority to monitor the petitioner's compliance with the terms

of his supervised release or to revoke his supervised release should it be determined that he has

violated the conditions of his release.[6]

## CONCLUSION

Accordingly, for the foregoing reasons, the petitioner's petitions for a writ of habeas

corpus should be summarily denied.

A proposed Order is attached.

---

[6]The petitioner has also moved for the return of his property which was seized in connection with F41-05. A habeas petition, which is the means in which to challenge confinement and seek release, is not the proper avenue in which to seek this relief. See Preiser v. Rodriguez, 411 U.S. 475, 484-85 (1973). The petitioner should pursue his motion for return of property by filing a motion in the Superior Court of the District of Columbia pursuant to Superior Court Rule 41(g).  Likewise, the petitioner also is not entitled to pursue monetary relief in lieu of return of property by this action. Id. at 494 (habeas corpus is not an appropriate or available federal remedy for a claim of monetary damages).

Additionally, the petitioner has alleged that he has not been given adequate access to the law library and has not been given adequate medical attention while at the District of Columbia Correctional Treatment Facility. Because this complaint solely challenges the actions of the District of Columbia Department of Corrections and does not challenge any actions of any United States official or agency, the Attorney General for the District of Columbia is the appropriate office to respond to these particular complaints on behalf of the District of Columbia Department of Corrections. See D.C. Code §§ 1-301.111, 24-105(a)(2). Accordingly, a copy of the United States' Opposition has been provided to Nadine Wilburn, Assistant Deputy Chief, Civil Litigation Division, Office of the Attorney General, 441 Fourth Street, N.W., Suite 6-South, Washington, D.C. 20001.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
D.C. Bar Number 451-058

_____

ROBERT D. OKUN
Assistant United States Attorney
Chief, Special Proceedings Section
D.C. Bar Number 457-078

_____

SHERRI L. BERTHRONG
Assistant United States Attorney
Special Proceedings Section
D.C. Bar No. 249-136
Sherri.Berthrong@usdoj.gov
555 4th Street, N.W., Room 10-450
Washington, D.C. 20530
(202) 514-6948

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the U.S. Parole Commission's Opposition has been electronically filed with the Court and served by mail upon the petitioner, Adrian Williams-El, DCDC # 162-518, Fed. Reg. No. 97648-131, Correctional Treatment Facility, 1901 E Street, S.E., E1B-20, Washington, D.C. 20003, and to Nadine Wilburn, Assistant Deputy Chief, Civil Litigation Division, Office of the Attorney General, 441 Fourth Street, N.W., Suite 6-South, Washington, D.C. 20001, this 8th day of November, 2005.

_____

Sherri L. Berthrong
Assistant United States Attorney